**Andrew L. GROVES, Appellant–Petitioner,**

**v.**

**STATE of Indiana, Appellee–Respondent.**

**No. 20A03–0207–PC–231.**

Court of Appeals of Indiana.

April 29, 2003.

Susan K. Carpenter, Public Defender of Indiana, Thomas C. Hinesley, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Stephen R. Carter, Attorney General of Indiana, Indianapolis, IN, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RATLIFF, Senior Judge.

### STATEMENT OF THE CASE

Petitioner–Appellant Andrew L. Groves appeals the denial of his petition for post-conviction relief. We affirm.

### ISSUES

Groves raises three issues for our review, which we restate as:

I. Whether Groves' guilty plea was conditioned on the dismissal of an illusory death penalty charge.

II. Whether Groves' guilty plea was the product of prosecutorial abuse of discretion.

III. Whether Groves' sentence was appropriate.

### FACTS AND PROCEDURAL HISTORY

On September 28, 1987, Groves entered a plea of guilty to a charge of murder. At the guilty plea hearing, Groves admitted that on August 16, 1986, in Elkhart, Indiana, he shot and killed William Wilks. On June 9, 1998, Groves filed a petition for post-conviction relief in which he questioned whether his guilty plea was voluntary and whether his sentence was proper. After a hearing, the post-conviction court denied Groves' petition. He now appeals.

### DISCUSSION AND DECISION

### STANDARD OF REVIEW

■ A petitioner who has been denied post-conviction relief appeals from a negative judgment. *Prowell v. State*, 741 N.E.2d 704, 708 (Ind.2001). Therefore, the petitioner must convince the court on appeal that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *Ben–Yisrayl v. State*, 753 N.E.2d 649, 653 (Ind.2001), *cert. denied*, 536 U.S. 918, 122 S.Ct. 2382, 153 L.Ed.2d 201 (2002).

### I. GUILTY PLEA

Groves contends that the post-conviction court erred in determining that his guilty plea was freely, knowingly, and intelligently given. He argues that the plea was made under the coercive pressure of a threat of capital punishment that had no legitimate basis. He notes that our supreme court has previously held that a bargained plea, motivated by an improper threat, is to be deemed illusory and a denial of substantive rights. *See Champion v. State*, 478 N.E.2d 681, 683 (Ind.1985); *Gibson v. State*, 456 N.E.2d 1006 (Ind.1983).

The State filed an information alleging that Groves had murdered Wilks on August 16, 1986. The State filed a second count seeking the death penalty by alleging as an aggravating circumstance that Groves had also murdered Theresa Davenport in South Bend, St. Joseph County, on July 15, 1986. Groves filed a motion to dismiss the death penalty count on the basis of *State v. McCormick*, 272 Ind. 272, 397 N.E.2d 276 (Ind.1979). The trial court granted the motion to dismiss, and the State filed an interlocutory appeal. Groves and the State subsequently reached an agreement whereby Groves would plead guilty to murder in exchange for the State's dismissal of its interlocutory appeal.

In *McCormick*, the State filed an information alleging that McCormick had murdered Douglas Overby on October 5, 1978. The State sought the death penalty under

Ind.Code § 35–50–2–9, which required the State to allege and prove beyond a reasonable doubt the existence of at least one of the "aggravating circumstances" listed therein. The statute further provided that this allegation was to be listed on a page separate from the rest of the charging instrument. If a guilty verdict was obtained on the principal charge, proof of the alleged aggravating circumstance occurred at a sentencing hearing. This hearing was bifurcated from the trial on the principal charge. If the principal charge was tried to a jury, the sentencing hearing was conducted before the same jury.

In a second count, the State sought the death penalty on the basis that McCormick had murdered Harold Lewis on May 17, 1977. The second murder was an aggravating circumstance under Ind.Code § 35–50–2–9(b)(8), which provided that the death penalty was appropriate when the State showed that "[t]he defendant has committed another murder, at any time, regardless of whether he has been convicted of that other murder." The State stipulated that the two murders were "not related or connected in any way." *McCormick*, 397 N.E.2d at 278.

Our supreme court held that Ind.Code § 35–50–2–9(b)(8) was unconstitutional as it was applied to McCormick. The court reasoned that McCormick "would be tried on the second count to a jury which has been undeniably prejudiced by having convicted him of an unrelated murder." *Id.* at 280. The court quoted the trial court for the proposition that "[s]ubsection (b)(8) allows the State to secure a conviction on a strong murder case, then seek the death penalty by proving a weak case before a jury which is undeniably prejudiced. This opens the door to death penalty recommendations upon a level of proof lower than proof beyond a reasonable doubt." *Id.*

In the present case, the trial court's order granting Groves' motion to dismiss the death penalty count was made a part of the post-conviction record. Upon the reasoning of *McCormick*, the trial court noted that the State was arguing that Groves' murder of Wilks, a member of the "Vice Lords" gang, was related to the earlier murder of Davenport, the outspoken girlfriend of a Vice Lords' chieftain. *See* Appellant's App. at 31. Essentially, the State argued that both murders occurred because Groves, a member of the "Disciples" gang, had declared a private war against any Vice Lords that he encountered. The trial court determined, however, that the term "related" as used in *McCormick* referred to "res gestae crimes" and not the continued activity of a gang member bent on eliminating those affiliated with a rival gang. In making its determination, the trial court noted both Justice DeBruler's dissent in *McCormick* and the California court's refusal to adopt *McCormick's* reasoning. *See* Appellant's App. at 38 (citing *People v. Balderas*, 41 Cal.3d 144, 222 Cal.Rptr. 184, 711 P.2d 480 (1985)). The trial court noted that its interpretation of *McCormick* might be unnecessarily restrictive and that three members of the then current supreme court had not joined in the *McCormick* decision. Accordingly, the trial court certified the issue for interlocutory appeal.

At the post-conviction hearing, Groves sought to prove that he was induced to plead guilty by the dismissal of an illusory death penalty charge. Brent Zook, Groves' attorney at the time Groves entered his plea, testified that Groves agreed to plead guilty in exchange for the State's dismissal of the interlocutory appeal. On cross-examination, Zook admitted that he didn't remember for sure, but he probably advised Groves that he would win the interlocutory appeal. Zook further stated

that "I probably also told him that it would be somewhat risky since he can't really know what the Court's going to do on the appeal." Transcript of Post–Conviction Hearing at 13.

A transcript of the guilty-plea hearing was entered into evidence at the post-conviction hearing. At the guilty-plea hearing, the following colloquy occurred between the court and Groves:

THE COURT: You understand that at the present time this case has not been set for trial either as to you or as to any of the co-defendants and the reason for that is because there is an interlocutory appeal pending in the Supreme Court with respect to the death penalty; do you understand that?

MR. GROVES: Yes.

\* \* \* \* \* \* \* \* \*

THE COURT: The agreement also says that the State of Indiana will not pursue the death penalty that was previously filed against you only in this case; do you understand that?

MR. GROVES: Yes.

THE COURT: Now, let's talk a little bit about the death penalty. You will recall that the State at some point in time filed a second paragraph against you alleging certain-a certain aggravating factor and sought to have the death penalty invoked in the case against you, do you understand that?

MR. GROVES: Yes.

THE COURT: Do you understand that your lawyer subsequently filed a motion asking that the death penalty portion be dismissed and after all those issues were briefed that this Court in fact did dismiss the death penalty which means that at least as of this moment in time the death penalty has been removed from this case; do you understand that?

MR. GROVES: Yes.

THE COURT: Do you understand, however, that when I took that action I did so as a part of what is called an interlocutory appeal and I certified the question to the Court of Appeals and ultimately to the Supreme Court to determine whether or not the dismissal of that death penalty was correct; do you understand that?

MR. GROVES: Yes.

THE COURT: Do you understand that there is presently as of this moment still an appeal pending on the validity of my dismissing the death penalty?

MR. GROVES: Yes.

\* \* \* \* \* \* \* \* \*

THE COURT: So at this point no part of the plea is because of the imminent threat of a death penalty even though as part of an agreement you will not pursue the dismissal-or the State will not pursue the dismissal of the death penalty; it that a fair assumption?

MR. GROVES: Yes.

Transcript of Guilty Plea Hearing at 4; 13–15.

■ After reviewing the post-conviction record, we conclude that Groves has failed to convince us that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. The State was entitled to appeal the denial of the dismissal of the death penalty count in an effort to ascertain the parameters of the term "related" as used in *McCormick*. Furthermore, in light of Justice DeBruler's strong *McCormick* dissent, the change in personnel on the supreme court after *McCormick* was decided, and the refusal of the California court to follow *McCormick*, we cannot say that the State's appeal was frivolous. Ac-

cordingly, we hold that the post-conviction court was correct in determining that Groves' plea was not motivated by an improper or illusory threat.

## II. PROSECUTORIAL DISCRETION

■ Groves contends that the prosecutor abused his discretion in filing the death penalty count. Groves further contends that the prosecutor's decision to file was a violation of his due process rights. Groves bases his contentions on the assumption that the *McCormick* holding precluded the prosecutor from pursuing the death penalty under the facts and circumstances of this case.

As we noted in our determination on Issue I, the facts and circumstances of this case presented the prosecutor with the opportunity to test the breadth of the term "unrelated" as that term is used in *McCormick*. The prosecutor did not abuse his discretion in determining that the murders of Wilks and Davenport were arguably related. The prosecutor properly tested the applicability of a generally adverse precedent.

## III. SENTENCING

Groves contends that the post-conviction court erred in determining that the trial court properly ordered him to serve a sixty-year sentence, the maximum term of years for the offense of murder under the statute in effect at the time of sentencing.[1] Groves argues that the sentence is improper because (1) the trial court cited an improper aggravating circumstance in support of the enhanced sentence; (2) the trial court failed to mention the mitigating circumstances raised by Groves; and (3) the trial court failed to realize that the facts of this case do not disclose the "very worst

offense and offender." Groves urges this court to reduce the sixty-year enhanced sentence to the forty-year presumptive sentence.

■ In general, sentencing decisions are within the trial court's discretion and are governed by Ind.Code § 35–38–1–7.1. *Henderson v. State,* 769 N.E.2d 172, 179 (Ind.2002). We review a trial court's sentencing decisions only for abuse of discretion, including a trial court's decision to increase or decrease the presumptive sentence because of aggravating or mitigating circumstances. *Id.*

■ In support of the enhancement of the presumptive sentence, the trial court listed the following aggravating factors: (1) the extent of Groves' criminal history, including the fact that the murder of Wilks occurred only eighteen months after Groves was released on parole for two other violent offenses; (2) the particular circumstances of the murder; (3) Groves' lack of remorse; (4) the likelihood that Groves' violent behavior will recur; and (5) Groves' involvement in the murder of Davenport. Groves contends that his alleged involvement in the murder of Davenport is an improper aggravating circumstance because evidence pertaining to that murder was admitted by the trial court during the hearing on Groves' motion to dismiss the death penalty for the single and explicit purpose of allowing the State to prove that the murders of Wilks and Davenport were "related" for purposes of the death penalty statute.

Our examination of the record discloses that the trial court did limit the use of the evidence pertaining to Davenport's murder. At the dismissal hearing, the trial court specifically stated that "[t]hese state-

---

1. At the time of sentencing, Ind.Code § 35–50–2–3 provided for a fixed term of forty years, with not more than twenty years added for aggravating circumstances or not more than ten years subtracted for mitigating circumstances.

ments [by witnesses to Davenport's murder and by witnesses who heard Groves' admission] are being offered solely for the purpose of the hearing on the Motion to Dismiss the Death Penalty portion and are not applicable to any other parts of the trial, at least not in the present form...." Transcript of Dismissal Hearing at 3–4. Under these circumstances, we must agree with Groves that the evidence of Davenport's murder could not be used to find an aggravator in the subsequent sentencing hearing. Accordingly, we conclude that the trial court's reliance upon this aggravator was error.

 Groves does not contend that the other aggravating circumstances relied on by the trial court were improper. Even one valid aggravating circumstance is sufficient to support an enhancement of a sentence. *Buzzard v. State*, 712 N.E.2d 547, 554 (Ind.Ct.App.1999), *trans. denied.* When the sentencing court improperly applies an aggravating circumstance but other valid aggravating circumstances exist, a sentence enhancement may still be upheld. *Bacher v. State*, 722 N.E.2d 799, 803 (Ind. 2000). This occurs when the invalid aggravator played a relatively unimportant role in the trial court's decision, and other aggravating circumstances were sufficient to sustain the trial court's decision. *Day v. State*, 560 N.E.2d 641, 643 (Ind.1990). When a reviewing court "can identify sufficient aggravating circumstances to persuade it that the trial court would have entered the same sentence even absent the impermissible factor, it should affirm the trial court's decision." *Id.* When a reviewing court "cannot say with confidence that the permissible aggravators would have led to the same result, it should remand for resentencing by the trial court or correct the sentencing on appeal." *Id.*

 We note that in articulating the challenged aggravator in the present case, the trial court did not give it much weight. The trial court characterized the aggravator as only being "of some importance." Sentencing Transcript at 14. The trial court considered the evidence pertaining to Davenport's murder as additional support for the trial court's valid conclusion that Groves' violent behavior was likely to recur. Based upon the magnitude of the valid aggravating circumstances found by the trial court, the trial court's statements at the sentencing hearing, and most importantly, upon the circumstances discussed below in relation to Indiana Appellate Rule 7, we conclude that the trial court would have entered the same sentence even absent the impermissible aggravator.

In support of his plea for the assessment of the presumptive sentence, Groves articulated a number of circumstances that he considered to be mitigating. Groves emphasized that he was only eighteen years old at the time he murdered Wilks. Groves also pointed out that (1) he had been placed in foster care at an early age; (2) he had been medicated as a child for his hyperactivity; (3) he had suffered racial ridicule; (4) he had become delinquent; (5) he was sent to Boys School where he became affiliated with a gang; and (6) he was emotionally and intellectually impaired. Groves also noted and now argues that Wilks "was himself armed with a sawed-off shotgun when the killing occurred." Appellant's Brief at 10.

Groves now contends that the trial court failed both to identify significant mitigating circumstances and to appropriately weigh the aggravators against the mitigators. Groves argues that the valid aggravators and mitigators rest at an approximate equipoise thus warranting the imposition of the presumptive sentence. *See Bustamante v. State*, 557 N.E.2d 1313, 1321 (Ind.1990).

■ Although a sentencing court must consider all evidence of mitigating circumstances offered by the defendant, the finding of a mitigating factor rests within the trial court's discretion. *Henderson,* 769 N.E.2d at 179. A court does not err in failing to find mitigation "when a mitigation claim is 'highly disputable in nature, weight, or significance.'" *Id.* (quoting *Smith v. State,* 670 N.E.2d 7, 8 (Ind.1996)). While a failure to find mitigating circumstances clearly supported by the record "may imply that the sentencing court improperly overlooked them, the court is obligated neither to credit mitigating circumstances in the same way as would the defendant, nor to explain why he or she has chosen not to find mitigating circumstances." *Id.*

■ In the present case, the trial court considered Groves' history as a juvenile and his gang-involvement to be aggravators, not mitigators. The court noted that Groves' exhibited behavioral problems that began at a very young age and continued to escalate in severity. The court also noted that Groves was a "chronic criminal" and that he was "more an adherent to the views of the gang than he is to the rules of law. . . ." Sentencing Transcript at 12. The trial court was not required to accept Groves' "spin" on how his age and gang involvement should impact upon his sentence.

The trial court also noted that although Wilks was armed at the time he first encountered Groves, he was unarmed at the time Groves killed him. Again, the court considered the circumstances of the murder to be an aggravator, not a mitigator. We cannot say that the trial court abused its discretion in doing so.

■ Our review of the record leads us to conclude that the trial court did not abuse its discretion in refusing to credit the claimed mitigators regarding Groves'

foster care, his hyperactivity, and his subjection to racial ridicule. Groves' attorney admitted that the foster parents had a positive influence on Groves' life. They also adopted him, gave him their last name, and made him part of their family. Groves' hyperactivity was controlled by medication, and even though he later went off the medication, there is no evidence to indicate that hyperactivity caused him to kill Wilks. In addition, the racial ridicule occurred at least five years before the murder.

■ The evidence of Groves' intellectual "impairment" shows that when Groves was tested approximately seven years prior to the murder, he was "at the upper end of the borderline retardation range of intellectual functioning" and that his performance and full scale I.Q. scores were "in the average to low-average ranges, respectively." The trial court did not abuse its discretion in not crediting this information.

Furthermore, one of the documents referring to Groves' emotional "impairment" was drafted in 1977, some nine years before Groves murdered Wilks. The second document was drafted in 1981, some five years before the murder. Again, we cannot say that the trial court abused its discretion in not crediting this information.

Finally, Groves contends that his sentence is inappropriate in light of his character. Specifically, he argues that "the gang-related murder of William Wilks by the 18 year-old, emotionally and intellectually limited Andrew Groves does not merit the maximum sentence permitted by law, which should 'be reserved for the very worst offenses and offenders.'" Appellant's Brief at 12 (citing *Bacher,* 686 N.E.2d at 802).

■ A sentence authorized by statute will not be revised unless the sentence is

inappropriate in light of the nature of the offense and the character of the offender. Indiana Appellate Rule 7(B).[2] We must refrain from merely substituting our opinion for that of the trial court. *Sallee v. State,* 777 N.E.2d 1204, 1216 (Ind.Ct.App. 2002), *trans. denied.* In determining the appropriateness of a sentence in light of the "very worst offense and offender" argument, we must concentrate less on comparing the facts of this case to others, whether real or hypothetical, and more on the nature, extent, and depravity of the offense for which the defendant was sentenced, and what it reveals about the defendant's character. *Watson v. State,* 776 N.E.2d 914, 922 (Ind.Ct.App.2002) (citing *Brown v. State,* 760 N.E.2d 243, 247 (Ind. Ct.App.2002), *trans. denied*).

 The record shows that Groves and a co-defendant took Wilks' gun from him and then moved him to a different location. After they arrived at the new location, Groves' co-defendant told Groves not to shoot the unarmed Wilks. Then, as Groves' testified at his guilty plea hearing, "I said, 'No, man, they don't believe what type of party it is.' So, you know, I shot the dude in the side and I shot him in the head and then, you know, that's basically it." Guilty Plea Transcript at 17. As Groves also testified at the guilty plea hearing, he shot Wilks with two different weapons. Guilty Plea Transcript at 18. He shot Wilks in the side with a .32 caliber handgun, and as the wounded Wilks laid on the ground begging for his life, Groves took a shotgun, fired it at Wilks head, and "[blew] away a substantial portion of his face." Sentencing Transcript at 7. The execution style and particularly callous na-

ture of the killing, coupled with Groves' complete lack of remorse, his allegiance to a gang "code" over societal restraints, his juvenile record, and the likelihood that he would kill again, leads us to the conclusion that the imposition of the maximum term of years was appropriate.

### CONCLUSION

The post-conviction court correctly determined that Groves' guilty plea was not the product of an illusory promise or a prosecutorial abuse of discretion. Furthermore, the post-conviction court correctly determined that Groves was properly sentenced and that the sixty-year sentence was appropriate in light of the nature of the offense and the character of the offender. Accordingly, the post-conviction court did not err in denying Groves' petition for post-conviction relief.

Affirmed.

FRIEDLANDER, J., and MATTINGLY–MAY, J., concur.

---

**2.** On July 19, 2002, our supreme court amended App.R. 7(B) and provided that the amendment would be effective January 1, 2003. The rule is directed to the reviewing court and sets forth the standard for review that is in effect at the time the reviewing court's decision or opinion is handed down. Although the sentence here was imposed prior to January 1, 2003, we apply the new rule.