John C. NEWSOME, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 35A02–0211–CR–981.

Court of Appeals of Indiana.

Oct. 14, 2003.

Transfer Denied Jan. 14, 2004.

Jill M. Denman, Matheny Michael Hahn & Bailey, LLP, Huntington, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender Deputy Attorney General Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

John Newsome appeals his convictions and sentences for two counts of rape as Class B felonies, one count of child molesting as a Class B felony, and two counts of incest as Class D felonies. We affirm.

### Issues

Newsome raises two issues for our review, which we restate as:

I.  whether the trial court abused its discretion when it refused to permit him to plead guilty to three of the five charges on the day of trial; and

II.  whether the trial court abused its discretion when it imposed the maximum possible sentence.

### Facts

The facts most favorable to the convictions are that Newsome is the father of T.W. and A.N. Newsome and the daughters' mother divorced when the girls were young, and they originally lived with their mother. When T.W. was approximately twelve years old and A.N. was approximately nine years old, their mother relin-

quished custody of them to Newsome and his then-wife.

A few weeks after the girls went to live with him, Newsome removed A.N.'s underwear and fondled her vagina. He began to fondle her more than once a week for some time, until the molestation progressed. Newsome had A.N. watch a pornographic movie with him and asked her if she liked what the people on the tape were doing. He then took her into the bathroom and had her perform oral sex on him. Thereafter, Newsome made A.N. perform oral sex on him frequently.

When A.N. was ten, he came into her bedroom. He licked her vagina and then inserted his penis into her vagina. When A.N. told him that it hurt, he told her that "[i]t'll get better." Tr. pp. 147–48. By the time she was twelve years old, Newsome was having intercourse with her several times a week.

Six months to a year after the girls went to live with Newsome, he also began touching T.W. The first time it happened, she awoke to find her underwear off and Newsome digitally penetrating her vagina. The molestation progressed, and he began digitally penetrating her vagina regularly. He then began making T.W. perform oral sex on him. Thereafter, he began engaging in sexual intercourse with her several times a week.

On one occasion, he made both girls perform oral sex on him simultaneously, one with her mouth on his penis and the other with her mouth on his scrotum. He also made the girls perform oral sex on each other simultaneously. He also engaged in sexual intercourse with each of them while instructing the other girl to watch.

T.W. became pregnant when she was fifteen and gave birth to a baby girl.[1] After T.W. became pregnant, Newsome placed A.N. on birth control. Newsome continued to engage in sexual intercourse with both girls until they moved out of the house.

On March 15, 2001, A.N. went to bed in her apartment intoxicated after having been out with friends. She woke up to find Newsome on top of her with his penis inside her vagina and her pants on the floor.

On February 16, 2002, T.W. fell asleep on the couch at A.N.'s house. T.W. awoke to find her pants off and Newsome having sex with her. The next day, Newsome apologized to her and said that it would not have happened if he had not been drinking.

The State charged Newsome with two counts of rape. A few weeks later, the State file a motion to amend the information, adding one count of child molesting and two counts of incest.

On the day of trial, Newsome sought leave to enter guilty pleas on the child molesting and incest charges while retaining his plea of not guilty on the rape charges. The trial court denied him leave to withdraw his not-guilty pleas, and he proceeded to a jury trial on all the charges. The jury found him guilty as charged. The trial court later sentenced him to the maximum sentence on each count and ran the terms consecutively, for a total sentence of sixty-six years. New-

---

1. The baby died when she was three years old after numerous brain surgeries. After exhuming her remains, it was determined that the cause of death was a cerebral hemorrhage due to congenital vascular malformations in her brain, a defect more commonly occurring when the parents of the child are related. DNA testing also took place, which confirmed that there was a 99.95% probability Newsome was the baby's father.

some now appeals the convictions and sentence.

### Analysis

#### I. Motion for Leave to Withdraw Not–Guilty Pleas

Newsome challenges the trial court's refusal of his request to plead guilty to the child molestation and incest counts on the morning of trial and proceed only on the rape counts. When the State objected, the trial court denied his request and stated:

> I'm of the opinion that if the Defendant wishes to plead Guilty to the charges, I think it's an all-or-nothing requirement on that stature, and that he can't just pick and choose; therefore affecting what's relevant or irrelevant in the rest of the charges. In other words, I believe that this is an attempt to disrupt the evidentiary flow for Counts I and II for some reason of which I'm unaware. I'm only surmising as Judge, and if he wishes to plead Guilty to all five Counts, I'll certainly accept that.

App. p. 134.

■■■ "A defendant has no right to have a guilty plea accepted." *Jennings v. State*, 723 N.E.2d 970, 972 (Ind.Ct.App. 2000). The trial court has "wide discretion" in deciding whether to accept a guilty plea. *Id.; Meadows v. State*, 428 N.E.2d 1232, 1233–35 (Ind.1981) (refusing to adopt

a rule that "if no proper cause exists to vitiate a plea the trial court should be obligated to accept it").[2] Therefore, we review a trial court's rejection of a guilty plea only for an abuse of discretion. *Webster v. State*, 708 N.E.2d 610, 613 (Ind.Ct. App.1999), *trans. denied.*

■■■ Newsome acknowledges the trial court's discretion with respect to accepting guilty pleas, but argues that the trial court abused that discretion here by refusing his guilty pleas because there was no sound basis for refusing them. He argues that there was "ample evidence" available to support the guilty pleas and that there was no evidence he was suffering from any mental defect rendering his plea unknowing or involuntary. He further argues the indication by the trial court that it would have accepted the guilty pleas for all of the charges causes the refusal to accept the three guilty pleas to be an abuse of discretion. He claims that he was prejudiced:

> [W]hen the jury was determining whether to believe [T.W.'s] and [A.N.'s] allegations of Rape, the introduction of DNA evidence that he had fathered a child during the prior incestuous relationship with [T.W.] ten (10) years ago and testimony regarding the prior molestation of [A.N.] served only to strengthen and bolster the State's otherwise weak cases for Rape.

2. Newsome refers us to a case from Montana as a "point of guidance" for this court. Appellant's Br. p. 8. In *Montana v. Peplow*, 307 Mont. 172, 36 P.3d 922 (Mont.2001), the Montana Supreme Court addressed the obligations that a court must satisfy prior to accepting a guilty plea, including ensuring that there is a factual basis for the plea, that the defendant understands the nature of charges made against him, that he understands the penalties, and that he understands his rights. *Id.* at 930–31. The court then found that because there was statutory authority for the court to accept the guilty plea, the court was mandated to accept it as long as the statutory

requirements of voluntariness, intelligence, and factual basis for the plea were fulfilled. *Id.* at 931. However, we need not seek guidance from other jurisdictions on this issue because our supreme court has clearly held that a trial court has discretion with respect to accepting guilty pleas and that accepting a guilty plea is not mandatory. *See Douglas v. State*, 663 N.E.2d 1153, 1156 (Ind.1996) (rejecting an interpretation of Indiana Code Section 35–35–1–4 that would not vest any discretion in the trial court as to whether to accept a plea); *Meadows*, 428 N.E.2d at 1233–35.

Appellant's Br. p. 10. He argues that the only evidence of the rapes was the victims' testimony and that the jury would not have convicted him of the rapes without the evidence of incest and child molesting.

The trial court rejected the request to plead guilty because it viewed it as an attempt to manipulate the evidence that would be admissible regarding the remaining counts. Our supreme court has held that a trial court does not abuse its discretion in rejecting a guilty plea where the court reasonably could have concluded that the request was a "ruse" intended to manipulate the system. *See Douglas v. State,* 663 N.E.2d 1153, 1156 (Ind.1996); *State v. Boze,* 482 N.E.2d 276, 277–79 (Ind.Ct.App. 1985) (refusing to allow a defendant to preclude prosecution for a greater offense by pleading guilty, over objection, to a lesser included offense, thereby manipulating an alleged double jeopardy violation). To establish he was prejudiced by the refusal to allow him to plead guilty, Newsome argues that his credibility was negatively impacted by the evidence of the incest and child molestation. Thus, the trial court's thought that Newsome was attempting to keep that evidence from the jury in the rape counts was exactly correct.

There is no doubt that the evidence relating to the incest and child molestation was prejudicial to Newsome and harmful to his defense. However, we do not agree with Newsome's claim that he would defi-nitely not have been convicted of the rapes without that evidence. The State presented credible evidence to support the rape charges apart from the DNA results and other evidence relating to the incest and child molestation. Both T.W. and A.N. testified consistently about the details of the rapes. That testimony was then corroborated by the evidence that Newsome had failed a polygraph test, specifically indicating that he had lied when he denied having raped the girls. To the extent that he claims the girls' testimony was not credible because the way in which they describe the rapes occurring was not believable, that is a request to reweigh the evidence. The State presented sufficient evidence to support the rape verdicts, even without the incest and child molestation evidence. We find no basis for reversal on this issue.

## II. Sentence

Sentencing decisions rest within the discretion of the trial court. *Small-wood v. State,* 773 N.E.2d 259, 263 (Ind. 2002). Thus, we review such decisions only for an abuse of discretion. *Id.* An abuse of discretion occurs if "the decision is clearly against the logic and effect of the facts and circumstances." *Pierce v. State,* 705 N.E.2d 173, 175 (Ind.1998).

Here, the trial court imposed the maximum sentence on each count and ordered the terms to be served consecutively, for a total sentence of sixty-six years.[3] During

---

**3.** The trial court sentenced Newsome as follows:

Count I, rape, Class B felony. The Court now sentences the Defendant to 10 years with 10 more years added for aggravating circumstances for a total executed sentence of 20 years. Count II, rape, a Class B felony. The Court now sentences the Defendant to the standard term of 10 years with 10 more years added for aggravating circumstances for a total executed sentence of 20 years. Count III, child molesting, a Class B felony. The Court imposes the standard term if imprisonment of 10 years with 10 years added for aggravating circumstances for a total executed sentence of 20 years. Count IV, incest, a Class D felony. To the standard sentence of one-and-one-half years with one-and-one-half years added for aggravating circumstances for a total executed sentence of three years. Count V, incest, a Class D felony. The Court sentences the Defendant to the standard term of one-and-one-half years with

the sentencing hearing, the trial court stated:

> In sentencing the Defendant, the Court has considered the following: factors made mandatory by statute, as follows: the risk that Defendant will commit another crime; the nature and circumstances of the crime committed; the Defendant's prior criminal record, character and condition; the age of the victim; statements made by the victims. The Court finds the following aggravating factors: the Defendant has a history of criminal activity; the Defendant is in need of correctional rehabilitative treatment that can best be provided by commitment to a penal facility; imposition of a reduced sentence or a suspension of the sentence and imposition would greatly depreciate the seriousness of the crime; the nature of the circumstances of the crime; criminal acts were committed repeatedly over a number of years; the Defendant shows no remorse for his actions. The Court finds no mitigating circumstances.

App. pp. 212–13. Newsome challenges his sentence on the basis that some of the aggravating factors cited by the trial court were improper and that it should have given mitigating weight to his criminal history and his steady employment. He also contends that maximum, consecutive sentences were not appropriate.

### A. Mitigating and Aggravating Circumstances

■ When the court imposes a sentence other than the presumptive sentence, we examine the record to determine whether the trial court sufficiently explained its reasons for selecting the sentence it imposed. *Sipple v. State*, 788 N.E.2d 473, 479–80 (Ind.Ct.App.2003), *trans. denied.* The trial court must identify all significant aggravating and mitigating circumstances, explain why each circumstance is aggravating or mitigating, and weigh mitigating circumstances against the aggravating factors. *Id.*

■ The State concedes that the trial court improperly relied upon the "in need of correctional treatment in a penal facility" aggravating factor. That factor may be used to enhance a sentence above the presumptive only when the trial court provides a specific or individualized reason as to why this defendant requires correctional treatment in excess of the presumptive term. *Flammer v. State*, 786 N.E.2d 293, 298 (Ind.Ct.App.2003), *trans. denied.* Here, the trial court did not provide the necessary explanation to support this factor.

■ The State further concedes that the trial court improperly relied upon the "reduced sentence would depreciate the seriousness of the crimes" factor because it serves only to support a refusal to impose less than the presumptive sentence and does not serve as a valid aggravating factor supporting an enhanced sentence. *See Pickens v. State*, 767 N.E.2d 530, 533 (Ind.2002). Here, there is no indication in the record that the trial court ever considered giving Newsome less than the presumptive sentence. Therefore, the consideration of this factor was improper. *See id.* (holding that the trial court's consideration of this factor was incorrect where there was nothing in the record to indicate

---

one-and-one-half years added for aggravating circumstances for a total executed sentence of three years.

The Court now states that all sentences shall be served consecutively with each oth-er for a total executed sentence of 66 years with the Indiana Department of Corrections....

App. pp. 213–14.

that the trial court was considering less than the presumptive sentence).

However, the trial court's erroneous consideration of these aggravators does not render Newsome's enhanced, consecutive sentences improper. When the sentencing court improperly applies an aggravating circumstance but other valid aggravating circumstances exist, a sentence enhancement may still be upheld. *Jones v. State*, 780 N.E.2d 373, 380 (Ind.2002). This occurs when the invalid aggravator played a relatively unimportant role in the trial court's decision, and other aggravating circumstances were sufficient to sustain the trial court's decision. *Groves v. State*, 787 N.E.2d 401, 408 (Ind.Ct.App. 2003), *trans. denied.* When a reviewing court can identify sufficient aggravating circumstances to persuade it that the trial court would have entered the same sentence even absent the impermissible factor, it should affirm the trial court's decision. *Id.* It is only when a reviewing court cannot say with confidence that the permissible aggravators would have led to the same result should it remand for resentencing by the trial court or correct the sentencing on appeal. *Id.* Ultimately, a single aggravator may support the enhancement of a sentence. *Hollen v. State*, 761 N.E.2d 398, 402 (Ind.2002).

Here, there were other aggravating factors relied upon by the trial court. One of those factors was Newsome's lack of remorse. A defendant's lack of remorse may be regarded as an aggravating factor even where the defendant insists upon his innocence unless the only evidence of guilt was the victim's uncorroborated testimony. *Bluck v. State*, 716 N.E.2d 507, 515 (Ind.Ct.App.1999). In this case, the victims' testimony was corroborated by the evidence that Newsome failed a polygraph examination, as well as by the DNA results indicating that he was the father of T.W.'s child. The victims corroborated each other's testimony in some respects as well, particularly with regard to the molestation incident involving both girls simultaneously. There was sufficient evidence to corroborate the victims' testimony as to all the charges such that it was not an abuse of discretion for the trial court to cite Newsome's lack of remorse as an aggravating factor.

The trial court also cited Newsome's criminal history as an aggravating factor. His record contains three fairly recent misdemeanor convictions, two of which were for battery. Newsome argues that his record is relatively minor and, therefore, not worthy of being considered as an aggravating factor. A person's criminal history is a valid aggravating circumstance, and thus Newsome's history was properly considered by the trial court as an aggravator, particularly since two of the convictions were for battery. *See* I.C. § 35–38–1–7.1(b)(2). The weight to be afforded this factor must be considered along with the other aggravators cited by the trial court. We would tend to agree with Newsome that an enhanced sentence would not have been appropriate had the only aggravator been his criminal history. However, that is clearly not the case. The criminal history was properly considered by the trial court along with the other aggravators.

The trial court also cited the nature and circumstances of the crime and noted that the molestation was committed repeatedly over a number of years. The nature and circumstances of the crime is a valid aggravating factor and one that the trial court is statutorily required to consider. *See* I.C. § 35–38–1–7.1(a)(2). Repeated molestations occurring over a period of time can be an aggravating factor supporting the maximum enhancement.

*Singer v. State,* 674 N.E.2d 11, 14 (Ind.Ct. App.1996). The evidence here emphatically supported the use of this factor as an aggravating circumstance. The evidence was that Newsome's molestations of the victims began when they were nine and twelve years old and continued for years, escalating from fondling to oral sex to frequent intercourse. There is no doubt that the trial court properly relied on this aggravator for the child molesting and incest sentences.

■■■■ The trial court found no mitigating factors. Newsome argues that his criminal history and his stable employment should have been considered by the trial court as mitigators. While a sentencing court must consider all evidence of mitigating circumstances presented by a defendant, the finding of mitigating circumstances rests within the sound discretion of the court. *Sipple,* 788 N.E.2d at 479–80. The trial court need not consider, and we will not remand for reconsideration of, alleged mitigating factors that are highly disputable in nature, weight, or significance. *Id.* A sentencing court need not agree with the defendant as to the weight or value to be given to proffered mitigating facts. *Id.* The trial court is not obligated to explain why it did not find a factor to be significantly mitigating. *Sherwood v. State,* 749 N.E.2d 36, 38 (Ind. 2001). Indeed, a sentencing court is under no obligation to find mitigating factors at all. *Echols v. State,* 722 N.E.2d 805, 808 (Ind.2000).

■■■ We have concluded that the trial court properly considered Newsome's criminal history to be an aggravating factor, and thus we find no abuse of discretion in not using it as a mitigating factor. Newsome's convictions were misdemeanors and, compared to some, relatively minor. However, he did have three convictions nonetheless, all of which were fairly

recent. He was not a model citizen such that the trial court might have been obligated to cite his criminal history as a mitigating factor. The fact that he has been steadily employed need not have been given the same significance by the trial court as Newsome would have it give. Many people are gainfully employed such that this would not require the trial court to note it as a mitigating factor or afford it the same weight as Newsome proposes. On the facts of this case, we cannot say that the trial court abused its discretion by not finding mitigating factors.

Although we do find the trial court's application of two of the aggravating factors to be improper, we do not find that this deficiency warrants a finding that the trial court abused its discretion in ordering enhanced sentences. Given the aggravators and lack of mitigators in this case, we cannot say that the trial court abused its discretion by concluding that the aggravators were substantial enough to warrant enhanced sentences. The enhancements were amply supported by the proper aggravating factors delineated by the trial court. *See Hildebrandt v. State,* 770 N.E.2d 355, 359 (Ind.Ct.App.2002) (holding that the trial court did not abuse its discretion when it imposed enhanced and consecutive sentences despite its reliance on an improper aggravating circumstance), *trans. denied.*

■■■ Similarly, the aggravating factors support the imposition of consecutive sentences. The decision to impose consecutive sentences for multiple offenses is generally within the trial court's discretion. *Kilpatrick v. State,* 746 N.E.2d 52, 62 (Ind. 2001). To impose consecutive sentences, the trial court must find at least one aggravator. *Morgan v. State,* 675 N.E.2d 1067, 1073 (Ind.1996). Given the circumstances of this case and the aggravators properly relied upon by the trial court, we

find no abuse of discretion in the imposition of consecutive sentences. *See Hildebrandt,* 770 N.E.2d at 359.

## B. Appropriateness

■ Having evaluated the aggravating and mitigating factors in this case, the question remains as to whether the sentence is appropriate pursuant to Appellate Rule 7(b), which provides that a reviewing court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Newsome argues that the maximum sentence is inappropriate because it should be reserved for the worst of offenders and offenses, which he posits he is not because he did not have a criminal record at the time of the molestations.

■ In general, the maximum possible sentences should be reserved for the worst offenders and offenses. *Buchanan v. State,* 767 N.E.2d 967, 974 (Ind.2002). In *Buchanan,* our supreme court attempted to clarify the rule regarding the imposition of maximum sentences as follows:

> This is not, however, a guideline to determine whether a worse offender could be imagined. Despite the nature of any particular offense and offender, it will always be possible to identify or hypothesize a significantly more despicable scenario. Although maximum sentences are ordinarily appropriate for the worst offenders, we refer generally to the class of offenses and offenders that warrant the maximum punishment. But such class encompasses a considerable variety of offenses and offenders.

*Id.* at 974 (emphasis omitted).

We recognize the fact that Newsome did not have a criminal record during the years when the molestation was occurring. However, we find it difficult to imagine how this class of offenses and this offender would not warrant the maximum possible punishment despite having no criminal history at the time. Newsome repeatedly molested his own daughters several times a week for a period of years. He fondled them, made them engage in oral sex with him and each other, and made them submit to sexual intercourse. On at least one occasion, he made them watch as he had intercourse with each one in turn. He impregnated one daughter, forced the other one to go on birth control at the age of twelve, and continued to molest both girls until they moved out of his house. He then raped both of them some years later. He refuses to take responsibility for any of his actions even in the face of the DNA results and the failed polygraph test results. The fact that he would do these things to his own daughters, to whom he was in a significant position of trust, over such a lengthy period of time makes the nature of these offenses vile and the character of this offender particularly despicable. *See Groves,* 787 N.E.2d at 410 (holding that in determining the appropriateness of a sentence in light of the "very worst offense and offender" argument, we must concentrate less on comparing the facts of this case to others, whether real or hypothetical, and more on the nature, extent, and depravity of the offense for which the defendant was sentenced, and what it reveals about the defendant's character). There is no question that the sentence imposed by the trial court here was appropriate under the circumstances. Newsome fits the category envisioned for the worst offenders.

## Conclusion

The trial court did not abuse its discretion when it denied Newsome's request for leave to plead guilty to three of the five charges on the morning of trial. The max-

imum possible sentence was appropriate in light of the nature of the offenses and Newsome's character. We affirm.

Affirmed.

DARDEN and MAY, JJ., concur.