**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DARREN BEDWELL**
Marion County Public Defender Office
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LUIS RAMOS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1103-CR-138 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Lisa F. Borges, Judge
Cause No. 49G04-1002-MR-7964

**May 7, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

Luis Ramos appeals his sentence for murder, a felony,[1] and Class A misdemeanor possession of a handgun without a license.[2] The State cross-appeals, requesting remand for correction of an error in the sentencing statement. We affirm and remand.

## FACTS AND PROCEDURAL HISTORY

On January 31, 2010, while at a public park, Ramos shot Brett Reinert six times in the back. Ramos shot Reinert because Ramos was upset about a fight his brother had with Reinert the night before. Several bystanders under the age of eighteen were present. Reinert died from his injuries. After a short investigation, Ramos was arrested for the crime.

The State charged Ramos with murder, a felony, and Class A misdemeanor possession of a handgun without a license. A jury convicted Ramos of both counts. At his sentencing hearing on March 2, 2011, the trial court sentenced Ramos to sixty years for murder, and one year suspended for Class A misdemeanor possession of a handgun without a license.

## DISCUSSION AND DECISION

1.    Appropriateness of Sentence

We may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. *Williams v. State*, 891 N.E. 2d 621, 633 (Ind. Ct. App. 2008) (citing Ind. Appellate Rule 7(B)). We consider not only the aggravators and mitigators found by the trial court, but also any other factors appearing in the record. *Roney v. State*, 872 N.E.2d 192, 206 (Ind. Ct. App. 2007), *trans. denied.* The appellant bears the burden of

---

[1] Ind. Code § 35-42-1-1.
[2] Ind. Code § 35-47-2-1.

demonstrating the sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

When considering the nature of the offense, the advisory sentence is the starting point to determine the appropriateness of a sentence. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g* 878 N.E.2d 218 (Ind. 2007). The advisory sentence[3] for murder is fifty-five years. Ind. Code § 35-50-2-3. One factor we consider when determining the appropriateness of a deviation from the advisory sentence is whether there is anything more or less egregious about the offense committed by the defendant that makes it different from the "typical" offense accounted for by the legislature when it set the advisory sentence. *Rich v. State*, 890 N.E.2d 44, 54 (Ind. Ct. App. 2008), *trans. denied*. Ramos shot Reinert six times in the back. The shooting occurred in a park in the presence of multiple bystanders, some of whom were under the age of eighteen. The trial court also noted the murder seemed to be a "planned offense . . . in retaliation for some sort of imagined slight the night before," (Tr. at 408), and evidence suggested the incident was gang-related. Based on the nature of his crime, we cannot say Ramos' sentence was inappropriate. *See Groves v. State*, 787 N.E.2d 401, 409-10 (Ind. Ct. App. 2003) (appellate court affirmed sixty year sentence for gang-related murder), *trans. denied*.

When considering the character of the offender, one relevant fact is the defendant's criminal history. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). The

---

[3] There is no advisory sentence for misdemeanor crimes. *Creekmore v. State*, 853 N.E.2d 523, 527 (Ind. Ct. App. 2006), *trans. denied*.

significance of a criminal history in assessing a defendant's character varies based on the gravity, nature, and number of prior offenses in relation to the current offense. *Id.* Ramos' juvenile record indicates an increase in the severity and violence of his criminal activity, as he was adjudicated for battery, criminal recklessness, carrying a handgun without a license, burglary, and theft. When sentencing Ramos, the court took into consideration his "prior failures on probation or suspended commitments in the various and sundry attempts to try to get him back on some sort of straight path all failed." (Tr. at 407.) In addition, Ramos stated after committing the crime that he "didn't feel anything." (*Id.* at 408.) Based on Ramos' criminal record and lack of remorse for his crimes, we cannot say his sentence was inappropriate.[4]

2. Sentencing Statement

Pursuant to Indiana Appellate Rules 7(A) and 9(D), the State appeals the inconsistency between the oral and written iterations of Ramos' sentence. In reviewing a sentence, we examine both the oral and written sentencing statements to discern the intent of the trial court. *McElroy v. State*, 865 N.E.2d 584, 589 (Ind. 2007). We have the option of adopting the statement that accurately pronounces the sentence the trial court intended to impose or remanding for resentencing. *Id.*

During the sentencing hearing, the trial court stated:

I think the appropriate sentence is sixty-one years and I'm going to order that one year be suspended, that's the year in the Marion County Jail. The reason

---

[4] Ramos also argues the trial court should have given more mitigating weight to his youth when sentencing him. As we no longer review the weight a factor is given by the trial court when determining a sentence, we need not address this argument. *See Anglemyer*, 868 N.E.2d at 491.

4

I'm suspending that is because – and I know this doesn't make sense to some folks and I can understand that and I honor the fact you may not understand this. I think that in every sentence there has to be a portion of the sentence that is meant for rehabilitation. The Defendant is so young that there is a possibility that he will be released in the future and with that I have a responsibility to try to allow for some rehabilitation. If I leave the year in the Marion County Jail as executed time, the Defendant will not be allowed into any rehabilitative programs while at the Department of Corrections [sic] and I believe it's important that he be allowed to take part in those programs, that he will avail himself of. We must not lose our optimism and our hope for the future, for every individual, and I know how painful that is to hear. But that'll be my sentence; sixty years to be executed at the Department of Corrections [sic] followed by one year suspended and the Defendant will be on probation for that one year.

(Tr. at 410.) Based on the court's comments, Ramos' one-year sentence for the Class A misdemeanor was intended to run consecutively with his sixty-year sentence for murder, as the court specifically pronounced the sentence as one for "sixty-one years." (*Id*.) In addition, that year was to be suspended to probation "to allow for some rehabilitation." (*Id.*) However, the Abstract of Judgment erroneously indicates the two sentences are to be served concurrently.

Ramos does not dispute the discrepancy between the oral and written sentencing statements, but requests that we remand for resentencing instead of adopting the oral statement that indicates the trial court's intent. We decline his request, as it is clear from the trial court's oral sentencing statement the intent was for the sentences to be served consecutively, as evidenced by the court's pronouncement of the sentence as "sixty-one years," (*id*.), and its explanation why the misdemeanor sentence was suspended and intended to occur after the sixty-year sentence. Accordingly, we remand for correction of the clerical

error in the Abstract of Judgment, and order the sentences to be served consecutively, consistent with the trial court's stated intent.

## CONCLUSION

We hold Ramos' sentence is not inappropriate based on his character and the nature of his offense. However, the court's intent was that his sentences be served consecutively, not concurrently as listed on the Abstract of Judgment. Therefore, we affirm Ramos' sentence and remand to the trial court for correction of the Abstract of Judgment to reflect the court's intent the two sentences be served consecutively.

Affirmed and remanded.

CRONE, J., and BROWN, J., concur.