## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 10 2015, 10:06 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Donald C. Swanson, Jr.
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Randall E. Reynolds, II, *Appellant-Defendant,* | February 10, 2015 |
| v. | Court of Appeals Case No. 02A03-1408-CR-271 |
| | Appeal from the Allen Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Wendy W. Davis, Judge |
| | Cause No. 02D04-1405-FD-503 |

**Brown, Judge.**

[1] Randall E. Reynolds, II, appeals his sentence for invasion of privacy as a class D felony. Reynolds raises one issue which we revise and restate as:

I. Whether the trial court abused its discretion in sentencing him; and

II. Whether his sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

## Facts and Procedural History

[2] In 2013, Reynolds, who was born in 1984, and Kathryn Gill began dating, and they dated for approximately six months. On February 26, 2014, Reynolds was served with a protective order. Between February 26, and April 20, 2014, Reynolds knowingly and intentionally violated the protective order in Allen County, Indiana. Specifically, Reynolds made contact with Gill via her cell phone and text messaging on numerous occasions. Gill filed seven different police reports in reference to the texts, calls, and items left on her porch. Reynolds admitted to Fort Wayne Police Detective Jason Snyder that he had called Gill and sent her text messages, that he had been to her house on at least two occasions, and that he had left a note and some flowers on her front porch. Detective Snyder asked Reynolds why he had contacted Gill, and Reynolds stated: "I guess I[']m an idiot." Appellant's Appendix at 29. Reynolds had

previously been convicted of invasion of privacy under cause number 17D01-0303-CM-212 on March 10, 2003.

[3] On May 6, 2014, the State charged Reynolds with invasion of privacy as a class D felony. On June 25, 2014, Reynolds pled guilty as charged.

[4] On July 24, 2014, the court held a sentencing hearing. At the hearing, Reynolds's counsel stated that he concurred with the recommendation in the presentence investigation report ("PSI") that Reynolds receive the advisory sentence of one and one-half years with 183 days executed and one year of probation. Reynolds's counsel argued that mitigating circumstances included Reynolds's age, he "had a relationship with this woman and he continued to have a relationship in violation of the Restraining Order," there was no violence toward the victim, he obtained his GED in 2010, he was employed up until his incarceration, and he pled guilty. Sentencing Transcript at 6.

[5] Gill testified that her world has "changed dramatically," that she stays locked inside unless she is with her mother, that she now carries mace, that she "had to completely shut off . . . from the world," and that her "total life was turned inside out and upside down." *Id.* at 8. She also stated that she was "completely fearful of" Reynolds and that "[i]f he won't act, he'll manipulate anyone to do it for him." *Id.* at 9. Nancy Brown, Gill's mother, testified that Reynolds began threatening Gill and her children and that "[i]nitially it wasn't as if he was gonna do anything, but he knew somebody that was going to." *Id.* at 12. She also testified that Reynolds would text Gill and say that he saw her at different

places, that he was always accurate, that it "was just really creepy," and that she could not figure out how he would know Gill's location because she did not believe that Reynolds had a car. *Id.* at 14.

[6] The prosecutor asked for two and one-half years executed. The prosecutor stated that the case was "really solid" and that Reynolds's guilty plea was more than acceptance of responsibility, it was "acceptance of reality," and asked that it be given "very little weight." *Id.* at 17.

[7] The court found Reynolds's guilty plea as a mitigator and stated that Reynolds pled guilty "and he's taken acceptance of responsibility and not even had the, um, I guess privilege of having a plea agreement." *Id.* at 20. The court did not give the guilty plea "a lot of weight" because he was caught by an officer. *Id.* The court stated that it heard no remorse from Reynolds, but acknowledged that it heard nothing from Reynolds which is his right. The court stated: "I have taken into consideration, um, the advocacy of [Reynolds's trial counsel] in this case in the sense of, um, the type of case that it is and – and you are right, nobody was hurt, yet." *Id.* at 21. The court observed that Reynolds knows how the protective orders work and "has chosen to show complete disdain for the system and the Court Orders." *Id.* at 21-22. The court acknowledged Reynolds's criminal history including ten misdemeanors, and found that there was a pattern of similar offenses that it found extremely aggravating. The court observed that prior attempts of rehabilitation failed and that Reynolds was at high risk to reoffend, and sentenced him to two years and 183 days with one year executed.

## *Discussion*

## I.

[8] The first issue is whether the trial court abused its discretion in sentencing Reynolds. We review the sentence for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* A trial court abuses its discretion if it: (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence – including a finding of aggravating and mitigating factors if any – but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law." *Id.* at 490-491. If the trial court has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.* at 491. The relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse of discretion. *Id.*

[9] The determination of mitigating circumstances is within the discretion of the trial court. *Rogers v. State*, 878 N.E.2d 269, 272 (Ind. Ct. App. 2007), *trans. denied*. The trial court is not obligated to accept the defendant's argument as to

what constitutes a mitigating factor, and a trial court is not required to give the same weight to proffered mitigating factors as does a defendant. *Id.* An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Anglemyer*, 868 N.E.2d at 493. If the trial court does not find the existence of a mitigating factor after it has been argued by counsel, the trial court is not obligated to explain why it has found that the factor does not exist. *Id.*

[10] Reynolds argues that the trial court abused its discretion when it failed to properly identify his GED, completion of substance abuse treatment through the Salvation Army, employment prior to his incarceration, the fact that he pled guilty fairly quickly, and the fact that he demonstrated remorse to the author of the PSI as mitigators.

[11] With respect to his GED, we observe that Reynolds completed his GED in 2010, and yet since 2011 he has been sentenced for five misdemeanors. We cannot say that the trial court abused its discretion in failing to consider Reynolds's GED as a mitigator.

[12] As for the completed substance abuse treatment in 2013, Reynolds's counsel at one point mentioned substance abuse[1] but Reynolds does not argue on appeal

---

[1] At the sentencing hearing, Reynolds's trial counsel stated:

> After reviewing all the documents, the Court records, and interviewing my client, uh, with respect to the mental health stipulation, uh, that of course a mental health

and our review does not reveal that he argued that his completed substance abuse treatment constituted a mitigator. "If the defendant does not advance a factor to be mitigating at sentencing, this Court will presume that the factor is not significant and the defendant is precluded from advancing it as a mitigating circumstance for the first time on appeal." *Henley v. State*, 881 N.E.2d 639, 651 (Ind. 2008) (quoting *Spears v. State*, 735 N.E.2d 1161, 1167 (Ind. 2000), *reh'g denied*).

[13] With respect to employment, we have held that "[m]any people are gainfully employed such that this would not require the trial court to note it as a mitigating factor . . . ." *Newsome v. State*, 797 N.E.2d 293, 301 (Ind. Ct. App. 2003), *trans. denied*. Reynolds's trial counsel argued that Reynolds was "employed . . . making fifteen ($15.00) dollars per hour . . . up until his incarceration." Sentencing Transcript at 19. The record does not contain any evidence regarding Reynolds's employment other than the PSI. Under "Employment," the PSI states: "TI Automotive, Ashley, Indiana, 2011 to 2013, laborer, $13.00 per hour, incarcerated." Appellant's Appendix at 23. However, under "Financial Situation," Reynolds indicated that he earned an unknown amount in 2013. *Id.* Further, under the risk and needs assessment, the PSI

---

evaluation would be a part of special conditions of probation. And I would anticipate that that would be the case, particularly in light of the substance abuse, uh, that these, uh, crimes suggest.

Sentencing Transcript at 18-19.

states that the areas of highest concern regarding the risk to reoffend were Reynolds's education, employment and financial situation, and substance abuse.[2] The "Evaluation/Summary" of the PSI states that Reynolds "has a GED and is unemployed." *Id.* at 25. We cannot say that Reynolds has demonstrated that the evidence of his employment is both clearly supported by the record and significant. *See Espinoza v. State*, 859 N.E.2d 375, 387-388 (Ind. Ct. App. 2006) (holding that the defendant failed to establish that the employment evidence was both significant and clearly supported by the record and that the trial court did not abuse its discretion by not considering defendant's employment history as a mitigating circumstance); *Bennett v. State*, 787 N.E.2d 938, 948 (Ind. Ct. App. 2003) (holding that the trial court properly did not find that the defendant's employment was a significant mitigating circumstance where defendant did not present a specific work history, performance reviews, or attendance records), *trans. denied*.

[14] To the extent Reynolds argues that the trial court abused its discretion by failing to find that he pled guilty fairly quickly as a mitigator, we note that the court found Reynolds's guilty plea as a mitigator but did not give it "a lot of weight" because he was caught by an officer. *Id.* at 20. As noted, the relative weight or value assignable to reasons properly found, or those which should have been

---

[2] The PSI indicates that Reynolds received his GED in 2010, that he owed approximately $50,000 in medical debt, and that he has used alcohol, marijuana, cocaine, methamphetamine, prescription pills, Spice, acid, ecstasy, heroin, and mushrooms.

found, is not subject to review for abuse of discretion. *Anglemyer*, 868 N.E.2d at 491.

[15] As for Reynolds's remorse, we acknowledge that the PSI indicates that he expressed remorse. However, Reynolds does not point to the record and our review does not reveal that Reynolds specifically argued that his remorse constituted a mitigator. Further, the court asked Reynolds at the sentencing hearing whether he had anything to say to the court, and Reynolds said: "No." Sentencing Transcript at 20. We also note that the court told Reynolds that it would put into place another no contact order and asked him if he understood how this works, Reynolds said yes, the court told Reynolds not to use the phones in the Department of Correction to contact certain individuals, and then the court said "don't smirk at me." *Id.* at 24. Under the circumstances, we cannot say that the trial court abused its discretion.

II.

[16] The next issue is whether Reynolds's sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[17] Reynolds argues that his crimes did not involve any violence, that he admitted his wrongdoing, and that his crime does not indicate that he is one of the worst offenders for whom maximum sentences are appropriate. He argues that he obtained his GED, has one dependent child, was employed at the time of his incarceration, and completed substance abuse treatment. He asserts that the imposition of the minimum sentence of six months is appropriate. The State argues that Reynolds's sentence is not inappropriate based on his repeated and egregious conduct, his criminal history, and his history of substance abuse.

[18] Initially, to the extent Reynolds claims that he received a maximum sentence and that such sentences should be reserved for the worst offenders, Reynolds did not receive a maximum sentence in this case when the court sentenced him to two years and 183 days. *See* Ind. Code § 35-50-2-7 (Supp. 2013) ("A person who commits a Class D felony shall be imprisoned for a fixed term of between six (6) months and three (3) years, with the advisory sentence being one and one-half (1 ½ ) years.").[3] We also observe that the court ordered that only one year of Reynolds's sentence be executed. *See Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010) (noting that in reviewing sentences pursuant to Ind. Appellate Rule 7(B), we may consider not only the appropriateness of the aggregate length of the sentence, but also "whether a portion of the sentence is

---

[3] Subsequently amended by Pub. L. No. 158-2013, § 660 (eff. July 1, 2014); Pub. L. No. 168-2014, § 117 (eff. July 1, 2014).

ordered suspended or otherwise crafted using any of the variety of sentencing tools available to the trial judge").

[19] Our review of the nature of the offense reveals that Reynolds knowingly and intentionally violated a protective order. Specifically, Reynolds made contact with Gill via phone and text messages on numerous occasions. Gill filed seven different police reports in reference to the texts, calls, and items left on her porch. Reynolds admitted to Detective Snyder that he had called Gill and sent her text messages, that he had been to her house on at least two occasions, and that he had left a note and some flowers on her front porch.

[20] Our review of the character of the offender reveals that Reynolds pled guilty as charged. The PSI reveals that Reynolds has one dependent child for which he is not ordered by a court to pay child support. The PSI indicates that Reynolds obtained his GED in 2010 and was employed between 2011 and 2013. According to the PSI, Reynolds denied having any mental health related illnesses, and reported that he first tried alcohol and marijuana when he was ten years old and used both once every other day until his present incarceration. He reported that he first tried cocaine when he was thirteen years old and used it every other day until 2008, used methamphetamine daily from age eighteen until 2009, abused prescription pills daily from age twenty to twenty-eight, used Spice daily from 2012 until 2013, and experimented with acid, ecstasy, heroin, and mushrooms. Reynolds indicated that he completed substance abuse treatment at the Salvation Army in 2013. The PSI indicates that he expressed

remorse for his actions and said that "[i]t was stupid." Appellant's Appendix at 24.

[21] As an adult, Reynolds was convicted of invasion of privacy as a misdemeanor in 2003. He was sentenced to 100 days with ninety days suspended and ten days executed, and his probation was revoked. In 2004, he was convicted of breaking and entering as a fifth degree felony in Ohio. In 2007, he was convicted of operating while intoxicated as a misdemeanor. In 2008, Reynolds was sentenced for battery as a class B misdemeanor and later violated his probation. Also in 2008, he was sentenced for criminal conversion as a misdemeanor. In 2010, he was sentenced for criminal trespass as a misdemeanor. In 2011, he was sentenced for driving while suspended as a misdemeanor, possession of marijuana as a misdemeanor, and public intoxication as a misdemeanor. In 2013, he was sentenced for battery resulting in bodily injury as a misdemeanor and child solicitation as a class A misdemeanor resulting in his registering as a sex offender. The PSI indicates that Reynolds's overall risk assessment score put him in the high risk category to reoffend.

[22] After due consideration of the trial court's decision, we cannot say that the sentence of two years and 183 days with one year executed imposed by the trial court is inappropriate in light of the nature of the offense and the character of the offender.

## *Conclusion*

[23]    For the foregoing reasons, we affirm Reynolds's sentence.

[24]    Affirmed.


Bailey, J., and Robb, J., concur.