SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| THE STATE OF ARIZONA, | ) Arizona Supreme Court |
| | ) No. CV-04-0344-PR |
| Petitioner, | ) |
| | ) Court of Appeals |
| v. | ) Division Two |
| | ) No. 2 CA-SA 04-0057 |
| HON. HOWARD FELL, JUDGE PRO | ) |
| TEMPORE OF THE SUPERIOR COURT OF | ) Pima County |
| THE STATE OF ARIZONA, in and for | ) Superior Court |
| the County of Pima, | ) No. CR20002900 |
| | ) |
| Respondent Judge, | ) |
| | ) **O P I N I O N** |
| EDWARD JOHN SANDERS, | ) |
| | ) |
| Real Party in Interest. | ) |
| | ) |
| _____ | ) |

Special Action from the Superior Court of Pima County
The Honorable Howard Fell, Judge Pro Tempore
No. CR20002900

**REMANDED**

_____

Opinion of the Court of Appeals, Division Two
209 Ariz. 77, 97 P.3d 902

**AFFIRMED**

_____

BARBARA LAWALL, PIMA COUNTY ATTTORNEY                    Tucson
    By   Amy Pignatella Cain, Deputy County Attorney
         Kathleen A. Mayer, Deputy County Attorney
Attorneys for State of Arizona

HIGGINS & HIGGINS, P.C.                                  Tucson
    By   Harold Higgins, Jr.
Attorneys for Edward John Sanders

_____

**H U R W I T Z,** Justice

¶1      Under Arizona law, if the death penalty is not imposed for first degree murder, the only other possible sentences are life with the possibility of release after a specified period ("life")[1] or life with no possibility of eventual release ("natural life").  Ariz. Rev. Stat. ("A.R.S.") § 13-703(A) (Supp. 2004).  We are called on in this case to decide (1) whether the Sixth Amendment requires that a jury find specific aggravating circumstances before the superior court may impose a natural life sentence and (2) whether the superior court can apply a law adopted in 2003 in deciding between a life and a natural life sentence for a first degree murder committed in 2000.

**I.**

¶2      Edward John Sanders was indicted in 2000 for sexual assault and murder.  The State filed a notice of intent to seek the death penalty and alleged two aggravating circumstances: that Sanders had committed the offense in an especially heinous, cruel, or depraved manner, *see* A.R.S. § 13-703(F)(6) (Supp.

---

[1]     The period depends upon the age of the murdered person.  If the murdered person is fifteen or more years of age, the period is twenty-five calendar years; if less than fifteen years of age, the period is thirty-five years.  A.R.S. § 13-703(A).

2

2000),[2] and that at the time of the offense Sanders was an adult and the victim was seventy years of age or older, *see* A.R.S. § 13-703(F)(9). The State later withdrew the notice seeking the death penalty.

¶3      Before the case proceeded to trial, two different cases and two different legislative enactments radically affected Arizona's first degree murder sentencing scheme. In 2002, the Supreme Court of the United States held Arizona's capital sentencing scheme unconstitutional because judges, not juries, determined the existence of the aggravating circumstances necessary to impose a death sentence. *Ring v. Arizona*, 536 U.S. 584 (2002) ("*Ring II*"). The legislature reacted to *Ring II* by amending Arizona's sentencing scheme to provide for jury trials on the existence of aggravating circumstances in capital cases. 2002 Ariz. Sess. Laws, 5th Spec. Sess., ch. 1.

¶4      In 2003, this Court held that under the pre-*Ring* statutory scheme, a judge imposing a non-capital sentence for first degree murder could consider only the aggravators set forth in A.R.S. § 13-703(F) when deciding the appropriate punishment. *State v. Viramontes*, 204 Ariz. 360, 64 P.3d 188 (2003). The legislature then amended the sentencing scheme to

---

[2]      Unless noted otherwise, all citations to A.R.S. § 13-703 in this opinion refer to the version of the statute in place at the time this crime was committed in 2000.

provide that a trial judge "[s]hall consider the aggravating and mitigating circumstances listed in section 13-702" when choosing between a life or natural life sentence for first degree murder. 2003 Ariz. Sess. Laws, ch. 255, § 2 (codified as A.R.S. § 13-703.01(Q) (Supp. 2003)).

¶5    On June 11, 2004, a jury found Sanders guilty of first degree murder and other offenses.  On June 24, 2004, the United States Supreme Court held Washington's non-capital sentencing scheme unconstitutional under the Sixth Amendment.  *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004).  The trial judge subsequently determined that *Blakely* required a jury to find the existence of aggravating circumstances before Sanders could be sentenced to natural life.  The trial judge also concluded that, notwithstanding the adoption of § 13-703.01(Q), only the aggravating circumstances listed in A.R.S. § 13-703(F) were relevant to the sentencing decision.[3]

¶6    The State petitioned for special action review in the court of appeals.  That court accepted jurisdiction and held that *Blakely* does not apply to Arizona's non-capital, first degree murder sentencing scheme because a trial judge is not required to make findings in addition to those made by the jury in its guilty verdict in deciding between a life and a natural

_____

[3]    Although neither the superior court's written order nor the transcripts of the proceedings below are explicit on this point, the parties agreed at oral argument in the court of appeals that the superior court so held.

4

life sentence.  *State v. Fell* (*Sanders*), 209 Ariz. 77, 89 ¶ 42, 97 P.3d 902, 914 (App. 2004).  It also held that A.R.S. § 13-703.01(Q) did not apply retroactively and that the trial court therefore could consider only the factors in § 13-703(F) when determining the sentence.  *Id*. at 85 ¶ 27, 97 P.3d at 910.

¶7        Sanders petitioned for review of the *Blakely* holding and the State cross-petitioned for review of the retroactivity holding.  We granted both petitions because the issues are of statewide importance.  We have jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24 (2003).

**II.**

**A.**

¶8        As we noted last year, *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny make plain "that the Sixth and Fourteenth Amendments of the United States Constitution require a jury to find, beyond a reasonable doubt, any fact that would 'expose the defendant to a greater punishment than that authorized by the jury's guilty verdict' alone."  *State v. Brown (McMullen)*, 209 Ariz. 200, 202 ¶ 7, 99 P.3d 15, 17 (2004) (quoting *Apprendi*, 530 U.S. at 494).  Any fact other than the existence of a prior conviction that increases a defendant's punishment beyond the "statutory maximum" must be found by a

5

jury beyond a reasonable doubt. *Id.* (quoting *Apprendi*, 530 U.S. at 490).

¶9      In *Blakely*, the Supreme Court held that

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict* . . . .   In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings.   When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

542 U.S. at ___, 124 S. Ct. at 2537.   Our initial task therefore is to determine the "statutory maximum" for first degree murder in Arizona:   the maximum sentence that can be imposed without the superior court making any factual findings beyond those reflected in the jury verdict of guilt.

**B.**

¶10     Determining the "statutory maximum" for *Apprendi/Blakely* purposes is of necessity a matter of statutory construction. *See Brown (McMullen)*, 209 Ariz. at 202-03 ¶¶ 11-12, 99 P.3d at 17-18.   When the crime in this case was committed, A.R.S. § 13-1105(C) (Supp. 2000) provided that "[f]irst degree murder . . . is punishable by death or life imprisonment as provided by section 13-703."   At that time, A.R.S. § 13-703(A) in turn provided as follows:

6

A person guilty of first degree murder as defined in § 13-1105 shall suffer death or imprisonment in the custody of the state department of corrections for life as determined and in accordance with the procedures provided in subsections B through G of this section. If the court imposes a life sentence, the court may order that the defendant not be released on any basis for the remainder of the defendant's natural life. An order sentencing the defendant to natural life is not subject to commutation or parole, work furlough or work release. If the court does not sentence the defendant to natural life, the defendant shall not be released on any basis until the completion of the service of twenty-five calendar years if the victim was fifteen or more years of age and thirty-five years if the victim was under fifteen years of age.

¶11     We interpreted this statutory scheme in *State v. Ring*, 200 Ariz. 267, 25 P.3d 1139 (2001) ("*Ring I*"), *rev'd on other grounds by Ring II*, 536 U.S. 584. We stated that in first degree murder cases, "[t]he range of punishment allowed by law on the basis of the [guilty] verdict alone is life imprisonment with the possibility of parole or imprisonment for 'natural life' without the possibility of release." *Id*. at 279 ¶ 42, 25 P.3d at 1151. Although *Ring I* did not address the precise issue now before us, we today confirm that our statement in that case accurately explained the law: nothing in § 13-703 required the finding of any fact beyond those reflected in the jury's verdict of guilt as a prerequisite to the imposition of a natural life sentence.

¶12     The first degree murder sentencing statute in effect in 2000 expressly required the finding of at least one

7

aggravating circumstance before a death sentence could be imposed. *See* A.R.S. § 13-703(E) (allowing sentence of death only if the "court finds one or more aggravating circumstances . . . and that there are no mitigating circumstances sufficiently substantial to call for leniency"); *State v. Gretzler*, 135 Ariz. 42, 54, 659 P.2d 1, 13 (1983) ("Where none of the statutory aggravating circumstances are found to be present, our statute prohibits the death penalty.").[4]  In contrast, nothing in § 13-703 required that any specific fact be found before a natural life sentence could be imposed.

¶13    Sanders nonetheless argues that life is the "presumptive" sentence for first degree murder and that natural life is an "aggravated" sentence.  The notion of a presumptive sentence arises from the statutes governing punishment for felonies other than first degree murder, which generally provide that a defendant "shall" receive a specific term of imprisonment.  *See* A.R.S. §§ 13-701 (2001) (governing sentences for class 2, 3, 4, 5 and 6 felonies) and 13-710 (2001) (governing sentences for second degree murder).  The presumptive sentence may be either increased or reduced based upon findings of specific aggravating or mitigating circumstances.  A.R.S. § 13-702(A) (Supp. 2004).  Thus, we held in *Brown (McMullen)* that

---

[4]    The current version of the statute similarly requires that the "trier of fact" find one of the statutory aggravating circumstances before the death penalty can be imposed.  A.R.S. § 13-703(E) (Supp. 2004).

the "presumptive sentence" under § 13-701 is the "maximum sentence" for purposes of *Apprendi* analysis. 209 Ariz. at 203 ¶ 12, 99 P.3d at 18.

**¶14** However, the statutes governing sentencing for first degree murder are markedly different. While §§ 13-701 and 13-710 provide that a specific sentence "shall" be imposed for various felonies in the absence of a finding of either the prior criminal history described in A.R.S. § 13-604 or the aggravating circumstances specified in § 13-702, § 13-703 contains no similar language. The statute does not provide that a defendant "shall" receive life unless certain facts are found. To the contrary, the statute provides that "[i]f the court imposes a life sentence, the court *may* order that the defendant not be released on any basis for the remainder of the defendant's natural life." A.R.S. § 13-703(A) (emphasis added). Had the legislature intended to require a specific finding be made before a natural life sentence could be imposed, it surely would have said so specifically, as it did in the statutes governing sentencing for felonies other than first degree murder.

**¶15** Unlike the determinate sentencing scheme generally applicable to other felonies, § 13-703(E) provides the superior court with the discretion to sentence an offender within a range – from life to natural life – for non-capital first degree murder. *See State v. Wagner*, 194 Ariz. 310, 313 ¶ 16, 982 P.2d

9

270, 273 (1999) (noting that the first degree murder statutes "lack . . . guidelines for imposing a sentence of life or natural life").  In this area, the legislature has concluded that the trial court can appropriately exercise its discretion to determine whether future release is possible (although not assured) or whether the defendant must instead spend the rest of his or her life in prison.[5]

### C.

¶16      *Viramontes* held that under the pre-*Ring* version of the first degree murder sentencing scheme, the "procedures and aggravators of section 13-703 apply" in all first degree murder cases, not simply those in which the death penalty is sought. 204 Ariz. at 362 ¶ 10, 64 P.3d at 190.   Sanders argues that because A.R.S. § 13-703(D) required that the court "return a special verdict setting forth its findings as to the existence or non-existence" of aggravating and mitigating circumstances, a natural life sentence could not be imposed in the absence of the

---

[5]      *State v. Ovind*, 186 Ariz. 475, 924 P.2d 479 (App. 1996), upon which Sanders relies, is not to the contrary.  The court of appeals expressly recognized in *Ovind* that "[u]nlike the sentences for other crimes, the statute relating to first degree murder does not describe any sentence as the 'presumptive' one." *Id.* at 478, 924 P.2d at 482.  The court nonetheless applied the rule of lenity in concluding that life was the presumptive sentence for purposes of commitment of a defendant adjudged guilty but insane, because it was "the *least* onerous commitment to which the statute exposes the Defendant."  *Id.* (emphasis added).   The "least onerous commitment" allowed by the guilty verdict is by definition plainly not the "maximum sentence" for purposes of *Apprendi* analysis.

finding of at least one of the aggravating circumstances listed in § 13-703(F). But Sanders' argument conflates the notion of a "statutory maximum" with an entirely different concept — the specification by the legislature of what facts a sentencing court may consider in exercising its discretion within a statutorily permitted sentencing range.

¶17 In holding that a judge deciding between a life and natural life sentence can consider only the factors in § 13-703(F), *Viramontes* neither expressly nor impliedly held that a court must find any specific aggravating factor to impose a natural life sentence. The special verdict explains the judge's reasons for imposing the sentence, but the statute does not require any specific factual finding before a defendant is statutorily eligible for a natural life term. As Justice Scalia explained in *Blakely*, there is an important constitutional difference between factual findings necessary to make a defendant eligible for a specified range of penalty and those that shape a trial judge's discretion within that range:

> [T]he Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing

11

discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence—and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.

542 U.S. at ___, 124 S. Ct. at 2540.

¶18 Sanders argues that the requirement in § 13-703(D) that the superior court return a special verdict is meaningless unless some specific factual finding is required before a natural life sentence is imposed. A statutory requirement that a judge make findings, however, does not mean that any specific finding is necessary for imposition of the sentence.[6] The statutory scheme restricted the factors that the superior court could consider in choosing between life and natural life

---

[6] The Supreme Court has reached a similar conclusion with respect to the federal sentencing guidelines. In *United States v. Booker*, the Court, after holding that the provision making the guidelines mandatory violated the Sixth Amendment, severed that provision, thus making the guidelines "effectively advisory." 125 S. Ct. 738, 756-57 (2005) (Breyer, J., for the Court (remedial majority)). So construed, the federal guidelines did not violate the rule of *Apprendi* because they simply directed sentencing judges to consider certain factors when imposing a sentence within the previously determined statutory range. *See id*. at 750 ("If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment.") (Stevens, J., for the Court (constitutional majority)). Thus, even though federal judges make specific findings with respect to facts not found by the jury in imposing sentence, there is no Sixth Amendment violation because those findings do not increase the statutory maximum. Similarly, the findings in an Arizona special verdict resulting in a natural life sentence do not increase the statutory maximum.

12

sentences for non-capital first degree murder. Given the requirement of the former statute that only the aggravating factors listed in § 13-703(F) be considered in determining whether a life or natural life sentence was to be imposed, s*ee* *Viramontes*, 204 Ariz. at 362 ¶ 12, 64 P.3d at 190, the special verdict served to ensure that inappropriate factors were not considered when the trial court exercised its sentencing discretion.[7]

¶19    We therefore conclude that the Sixth Amendment does not require that a jury find an aggravating circumstance before a natural life sentence can be imposed.

### III.

¶20    The remaining question is what factors the judge may consider in exercising his discretion to sentence a defendant to either life or natural life. *Viramontes* held that the former version of § 13-703 limited trial judges to the aggravating factors listed in subsection (F) of that statute. Several months after that opinion was issued, the legislature enacted

---

[7]    When the sentencing scheme places discretion in the superior court to sentence within a specified range, an appellate court has the power to review the sentence for an abuse of discretion. *See State v. Grier*, 146 Ariz. 511, 515, 707 P.2d 309, 313 (1985) ("An abuse of discretion in sentencing is characterized by capriciousness, arbitrariness or by failure to conduct an adequate investigation into facts necessary for an intelligent exercise of the court's sentencing power."). While an abuse of discretion will, as a practical matter, rarely be found, the trial court's explanation of its reasoning serves to facilitate such review, and is thus never a useless exercise.

13

what is now A.R.S. § 13-703.01(Q)(2) (Supp. 2004), providing that "[i]n determining whether to impose a sentence of life or natural life," a trial court "[s]hall consider the aggravating and mitigating circumstances listed in section 13-702 and any statement made by a victim." 2003 Ariz. Sess. Laws, ch. 225, § 2. The State argues that § 13-703.01(Q) should be applied when the superior court determines Sanders' sentence.

**A.**

¶21    "No statute is retroactive unless expressly declared therein." A.R.S. § 1-244 (2002). Nothing in 2003 Ariz. Sess. Laws, ch. 225, expressly declares that § 13-703.01(Q) is to be retroactively applied. In contrast, when the legislature amended the death penalty sentencing scheme after *Ring II*, it carefully detailed the application of various provisions of the new statute to pending cases. 2002 Ariz. Sess. Laws, 5th Spec. Sess., ch. 1, § 7.

¶22    However, the absence of any legislative declaration about retroactivity does not end our inquiry.

> This court has previously created an exception to the general rule requiring express language of retroactivity. Enactments that are procedural only, and do not alter or affect earlier established substantive rights may be applied retroactively. Even if a statute does not expressly provide for retroactivity, it may still be applied if merely procedural because litigants have no vested right in a given mode of procedure.

14

*Aranda v. Indus. Comm'n*, 198 Ariz. 467, 470 ¶ 11, 11 P.3d 1006, 1009 (2000).  We thus must determine whether § 13-703.01(Q) is a procedural or substantive change to prior law.

¶23    We conclude that the change was not simply procedural. Under the law in effect at the time that Sanders committed his crime, the superior court could consider only the ten aggravators specified in § 13-703(F) in making the choice between a life and natural life sentence.  Section 13-703.01(Q) instead empowers the trial court to take into account the twenty-one aggravators listed in § 13-702(C).  Because the new statute thus allows the imposition of a sentence on the basis of factors that the prior law excluded from consideration, it is plainly a substantive change in the law.  *See State v. Correll*, 148 Ariz. 468, 482, 715 P.2d 721, 735 (1986) (holding that a law changing the aggravating circumstances that may be considered in a decision to impose the death penalty for murder under § 13-703 "is a substantive, rather than a procedural, change").

**B.**

¶24    We have recognized another exception to the general rule against retroactive application of a statutory amendment when the amendment is simply a "clarification" of existing law. "An amendment which, in effect, construes and clarifies a prior statute will be accepted as the legislative declaration of the

15

original act." *City of Mesa v. Killingsworth*, 96 Ariz. 290, 297, 394 P.2d 410, 414 (1964).

¶25      This rule of statutory interpretation applies, however, only when the "original statute" is ambiguous. *State v. Sweet*, 143 Ariz. 266, 269, 693 P.2d 921, 924 (1985). Even assuming *arguendo* that § 13-703 was ambiguous before *Viramontes*, no such conclusion was possible after our decision in that case. "Once published, our interpretation becomes part of the statute." *Galloway v. Vanderpool*, 205 Ariz. 252, 256 ¶ 17, 69 P.3d 23, 27 (2003). After *Viramontes*, it was clear that § 13-703 precluded a trial judge from considering the aggravating circumstances in § 13-702 when determining whether to impose a life or natural life sentence. The 2003 statutory amendment to § 13-703.01(Q) cannot therefore be read as a clarification of prior law. *Compare Sweet*, 143 Ariz. at 271, 693 P.2d at 926 (construing amendment to A.R.S. § 13-604.01 as "clarification" where "[t]he amendment did not change that which was clear and distinct in the first place"), *with State v. Murray*, 194 Ariz. 373, 982 P.2d 1287 (1999) (refusing to apply amendments to A.R.S. §§ 13-604, -604.02 retroactively, where amendments abrogated prior case law interpreting statutory language).

## C.

¶26      Finally, the State argues that *Viramontes* was wrongly decided and urges that we overrule it. We decline to do so.

16

> The doctrine of *stare decisis*, which requires us to give weight to previous decisions addressing the same issue, seeks to promote reliability so that parties can plan activities knowing what the law is. Importantly, our deference to precedent is strongest when prior decisions construe a statute. [E]ven those who regard stare decisis with something less than enthusiasm recognize that the principle has even greater weight where the precedent relates to interpretation of a statute.

*Galloway*, 205 Ariz. at 256 ¶ 16, 69 P.3d at 27 (internal quotation marks and citations omitted). *Viramontes*, as noted above, involved statutory construction.

¶27     The legislature is, of course, free at any time to respond to our statutory interpretations by changing the relevant statute. That is precisely what occurred here. By enacting § 13-703.01(Q), the legislature restricted the application of the holding in *Viramontes* to those cases arising before the effective date of the new statute. Thus, there is no reason to revisit our prior decision.

**IV.**

¶28     For the reasons above, the opinion of the court of appeals is affirmed, and the case is remanded to the superior court for further proceedings consistent with this opinion.

_____
Andrew D. Hurwitz, Justice

CONCURRING:


_____
Ruth V. McGregor, Chief Justice

17

_____
Rebecca White Berch, Vice Chief Justice


_____
Michael D. Ryan, Justice


_____
Charles E. Jones, Justice (Retired)