Carl L. BANKS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 79A05–0506–CR–336.

Court of Appeals of Indiana.

Feb. 6, 2006.

Transfer Denied March 2, 2006.

Harold E. Amstutz, Lafayette, for Appellant.

Steve Carter, Attorney General of Indiana, Gary Damon Secrest, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Carl Banks appeals his sentence for operating a motor vehicle while privileges are forfeited for life, a class C felony. We affirm.

### Issues

We restate the issues as follows:

I. Whether the trial court abused its discretion in failing to find certain mitigating factors and in weighing the aggravators and mitigators; and

II. Whether the sentence is appropriate.

### Facts and Procedural History

On October 8, 2004, the State charged Banks with operating a motor vehicle while privileges are forfeited for life, a class C felony. On February 23, 2005, Banks pleaded guilty. Pursuant to the plea agreement, Banks acknowledged that he would receive "such sentences as this

Court deems appropriate after hearing any evidence or argument of counsel." Appellant's App. at 6. The advisory sentence for a class C felony is a fixed term of four years. Ind.Code § 35–50–2–6. The trial court may add not more than four years for aggravating circumstances and subtract not more than two years for mitigating circumstances. *Id.* Following a sentencing hearing on May 10, 2005, the trial court entered its sentencing order that same day, stating in pertinent part:

The Court finds as aggravating factors that the defendant has a history of criminal or delinquent activity, the defendant was on probation at the time of the instant offense, and there have been prior attempts at rehabilitation that have been unsuccessful.

The Court finds as a mitigating factor the defendant has a good work history.

The Court further finds that the aggravating factors outweigh the mitigating factors.

IT IS ORDERED AND ADJUDGED that the defendant, Carl L. Banks, be, and he hereby is, sentenced to the Indiana Department of Correction for a period of six (6) years for the crime of Operating a Motor Vehicle While Privileges Are Forfeited for Life, as charged in Count I, a Class C felony. The defendant shall execute four years and two years shall be suspended.

The defendant shall serve the executed portion of his sentence of four (4) years with Tippecanoe County Community Corrections. The first two (2) years shall be served on Work Release and the remaining two (2) years shall be served at a level to be determined by Tippecanoe County Community Corrections (and consultation with Probation Department) with an initial recommendation of house arrest. Upon notification the defendant does not qualify for Tippecanoe County Community Corrections or is rejected he will be transported to the Indiana Department of Corrections to serve his executed sentence.

IT IS FURTHER ORDERED AND ADJUDGED that two (2) years of the sentence of imprisonment should be, and the same hereby is, suspended and the defendant placed on supervised probation for two (2) years.

Appellant's App. at 57–58.

On May 18, 2005, the State filed a petition to revoke probation subsequent to Banks's failure to contact the work release program. On May 31, 2005, the trial court issued an arrest warrant for Banks because of his failure to report to work release. Banks now appeals.

### Discussion and Decision

Banks contends that the trial court "improperly exercised it's [sic] discretion in the finding and balancing of aggravating and mitigating circumstances, and as a result the defendant received an inappropriate and excessive [four] year executed sentence." Appellant's Br. at 8. As this Court recently noted in a similar case, whether the trial court abused its discretion in weighing aggravators and mitigators has in the past been a separate analysis from whether the sentence was inappropriate under Indiana Appellate Rule 7(B). *Hope v. State*, 834 N.E.2d 713, 717 (Ind.Ct.App.2005) (citing *Noojin v. State*, 730 N.E.2d 672, 678 (Ind.2000)). In recent opinions, however, our supreme court has combined the two standards. *Id.* We described the revised analysis as follows:

Now, when faced with a non-*Blakely* challenge to an enhanced sentence, it appears the first step is to determine whether the trial court issued a sentencing statement that (1) identified all significant mitigating and aggravating circumstances; (2) stated the specific

reason why each circumstance is determined to be mitigating or aggravating; and (3) articulated the court's evaluation and balancing of the circumstances. If we find an irregularity in a trial court's sentencing decision, we have the option to remand to the trial court for a clarification or new sentencing determination, to affirm the sentence if the error is harmless, or to reweigh the proper aggravating and mitigating circumstances independently at the appellate level. Even if there is no irregularity and the trial court followed the proper procedures in imposing sentence, we still may exercise our authority under Appellate Rule 7(B) to revise a sentence that we conclude is inappropriate in light of the nature of the offense and the character of the offender.

*Id.* at 717–18 (citations and quotation marks omitted).

### I. *Aggravating/Mitigating Factors*

█ Here, the trial court identified three aggravators and one mitigator in its sentencing statement, and Banks does not dispute the court's use of those factors. Banks claims, however, that the trial court failed to find several additional mitigators that were present, including a probation department Level of Services Inventory ("LSI") that showed Banks to be a low/moderate risk to reoffend; Banks's relationship with his "supportive significant other"; his guilty plea; his expression of remorse at the sentencing hearing; and the fact that his crime was non-violent and victimless. Appellant's Br. at 10.

While a sentencing court must consider all evidence of mitigating circumstances presented by a defendant, the finding of mitigating circumstances rests within the sound discretion of the court. The trial court need not consider, and we will not remand for reconsideration of, alleged mitigating factors that are highly disputable in nature, weight, or significance. A sentencing court need not agree with the defendant as to the weight or value to be given to proffered mitigating facts. The trial court is not obligated to explain why it did not find a factor to be significantly mitigating. Indeed, a sentencing court is under no obligation to find mitigating factors at all.

*Newsome v. State*, 797 N.E.2d 293, 301 (Ind.Ct.App.2003) (citations omitted), *trans. denied.* When a trial court fails to find a mitigator clearly supported by the record, however, a reasonable belief arises that the trial court improperly overlooked that factor. *Id.* The State argues that Banks waived the opportunity to have his guilty plea considered as a mitigator because he failed to ask the trial court to consider it. *See Pennington v. State*, 821 N.E.2d 899, 905 (Ind.Ct.App.2005) (defendant's failure to raise proposed mitigators at sentencing precludes him from advancing them for first time on appeal). Our supreme court has held, however, that trial courts should be "inherently aware of the fact that a guilty plea is a mitigating circumstance." *Francis v. State*, 817 N.E.2d 235, 237 n. 2 (Ind.2004). Therefore, we conclude that the court should have identified Banks's guilty plea as a mitigator.

█ It is unlikely, however, that the trial court would have imposed a lesser sentence, even if it had properly acknowledged the guilty plea mitigator. Indiana courts have long held that a defendant who pleads guilty is entitled to receive some benefit in return. *Williams v. State*, 430 N.E.2d 759, 764 (Ind.1982). Pursuant to Banks's plea agreement, and as the trial court was made aware at sentencing, the State dismissed a petition to revoke probation filed against Banks in another criminal case. Appellant's App. at 6, 40. Because Banks had already received some

benefit in exchange for his guilty plea, Banks was entitled to little, if any, mitigating weight for it at sentencing. Thus, we find that the trial court's omission in this regard was harmless error.

The State also claims that Banks has waived his claims of error regarding the trial court's failure to identify as mitigators the probation department LSI results and the non-violent aspect of his crime because he failed to mention them to the trial court at the sentencing hearing. We agree. However, even in the absence of waiver, the trial court was not required to consider these two factors, as they were highly disputable in significance. The LSI results were included in the presentence investigation report presented to the trial court prior to sentencing. The probation department concluded that "there is a 31.1% chance he will re-offend within one year if no services are provided." *Id.* at 16. Although the 31.1% result placed Banks in the "low/moderate risk/needs" category, it was well within the trial court's discretion to reject the LSI as a mitigator because it is, after all, merely a prediction of future behavior. *Id.* Further, the trial court might have disregarded the LSI as somewhat unreliable in light of the fact that Banks was arrested twice in the five months following his arrest in this case and had two criminal cases pending at the time of sentencing.

Like the LSI, the fact that Banks's crime was non-violent and victimless was apparent from the record before the trial court. By definition, the crime of operating a vehicle while privileges are forfeited for life is not a crime of violence. In some cases, a person, at the time he operates a vehicle while his privileges are forfeited for life, might act violently and/or cause injury to another person—for example, by driving recklessly and causing a traffic accident, or by striking a pedestri-

an. In such circumstances, however, the defendant would likely face additional charges related to the violent nature of his driving. Banks was convicted of a crime that does not contain violence as an element. Therefore, the trial court was not required to assign mitigating weight to these factors at sentencing.

Banks also argues that he expressed remorse at the sentencing hearing and that the trial court erred by failing to assign some mitigating weight to his statements. When the trial court asked Banks why he was driving with a suspended license, Banks replied, "The devil got a hold of me. I was set free and (inaudible). I know it wasn't a normal thing to do. I just felt like driving again." Tr. at 18. Later, he said,

> I have never planned on my life turning out the way that, you know, it has, with all this in and out of trouble stuff. I mean, you know, I was raised without no father from age eight. My mom, you know, tried to do the best she could do.... I'm not blaming anybody else for any of my conduct but, you know, I'm not perfect, but I've just made some bad decisions and I believe given another chance you won't be seeing me again in this courtroom or anybody else's courtroom, hopefully. I apologize to the Court for even being here.

*Id.* at 29. It appears that Banks was somewhat ambivalent in his statements to the trial court. He failed to take ·full responsibility for his actions, and thus we cannot find that the trial court abused its discretion by choosing not to give mitigating weight to his remorseful statements. *See Price v. State*, 765 N.E.2d 1245, 1253 (Ind.2002) (defendant's statements that he was "very sorry about what happened" and that he knew how it felt to lose a loved one were insufficient to justify finding that trial court's failure to consider remorse as

mitigating factor was abuse of discretion); *see also Bonds v. State*, 721 N.E.2d 1238, 1243 (Ind.1999) (concluding that trial court did not abuse its discretion by failing to find remorse as a mitigator where defendant's statement—"I'm remorseful for all what happened. I was just in the wrong place at the wrong time . . . I just don't know what went wrong."—did not demonstrate full acceptance of responsibility for crime).

■ Finally, Banks contends that the trial court should have given some mitigating weight to the fact that he had a long-term relationship with, Carol Ann Peterson, a "supportive significant other." Appellant's Br. at 10. However, as the State points out, Banks was driving Peterson's car at the time of his arrest, and she testified that she had allowed him to drive it knowing that his license was suspended. It was certainly not an abuse of discretion for the trial court to decline to treat Banks's relationship with Peterson. as a mitigating factor.

In sum, the trial court abused its discretion only in failing to consider Banks's guilty plea as a mitigator, and as discussed above, we find that this was harmless error.

## II. *Appropriateness of Sentence*

■ Banks also claims that his sentence is inappropriate. Under Indiana Appellate Rule 7(B), "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In the instant case, the nature of the offense consisted of Banks driving a vehicle after his privileges had been forfeited for life. Although his girlfriend, Carole Ann Peterson, was present and advised him that it was not "a good plan" for

him to drive her car, and although she could have driven the car to the couple's destination, Banks instead chose to break the law by getting behind the wheel. Appellant's App. at 32. As for the character of the offender, Banks was asked at trial why he had committed this offense, and he replied, "I just felt like drivin[g] again." *Id.* at 23. This statement, along with Banks's extensive criminal history of eleven felony convictions and sixteen misdemeanor convictions—including five traffic-related convictions and two habitual traffic violator findings—clearly indicates that Banks thinks he is above the law and has not benefited from the State's many prior attempts at rehabilitation. Therefore, in light of the nature of the offense and the character of the offender, we conclude that the enhanced six-year sentence was appropriate in this case.

Affirmed.

FRIEDLANDER, J, concurs.

MAY, J., concurs in result with opinion.

MAY, Judge, concurring in result.

Banks was charged with a Class C felony on October 8, 2004, and pleaded guilty on February 23, 2005. On April 25, 2005, our legislature responded to *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *reh'g denied* 542 U.S. 961, 125 S.Ct. 21, 159 L.Ed.2d 851 (2004), by amending our sentencing statutes to replace presumptive sentences with "advisory" sentences. Banks was sentenced after the effective date of the amendment, on May 10, 2005. The majority assumes, as do Banks and the State, that the new version of Ind.Code § 35–50–2–6, providing for an advisory sentence, applies in this case. I do not believe this statute can be applied retroactively, but I believe Banks' sentence is proper under either sentencing scheme. I

accordingly concur in the result. Under our post-*Blakely* statutory scheme premised on "advisory" rather than "presumptive" sentences, a court may impose any sentence that is authorized by statute and permissible under the state Constitution *"regardless of the presence or absence of aggravating circumstances or mitigating circumstances."* Ind.Code § 35–38–1–7.1(d) (emphasis supplied). For purposes of felony sentencing, an "advisory sentence" is "a guideline sentence that the court may voluntarily consider as the midpoint between the maximum sentence and the minimum sentence." Ind.Code § 35–50–2–1.3. A court is required to use an advisory sentence in imposing consecutive sentences in accordance with Ind.Code § 35–50–1–2 (addressing crimes of violence) and in imposing an additional fixed term on an habitual offender or a repeat sexual offender. However, the court is not required to use the advisory sentence in imposing the sentence for the underlying offense. *Id.*

A substantive change in a penal statute is an *ex post facto* law if applied retroactively, but a procedural change is not. *Dobbert v. Florida*, 432 U.S. 282, 293, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). In *Samaniego–Hernandez v. State*, 839 N.E.2d 798 (2005), a panel of this court noted the amendments to the sentencing statute were made effective prior to the date of Samaniego-Hernandez's sentencing hearing. It then stated, without elaboration, "However, this change is procedural rather than substantive . . . [t]herefore, we analyze this issue under the amended statute that provides for advisory rather than presumptive sentences." 839 N.E.2d at 805. Having determined the amended statute could be applied to crimes committed before the effective date of the statute, the panel found no abuse of discretion in a thirty-five year sentence for a Class A felony.

The *Samaniego–Hernandez* panel relied on, but did not discuss or explain the application of, a statement from *Ritchie v. State*, 809 N.E.2d 258, 264 (Ind.2004) that an amendment is "procedural in nature for purposes of the *ex post facto* doctrine, and may be applied to crimes committed before the effective date," if it "neither changes the elements of the crime nor enlarges its punishment." Ritchie killed a police officer on September 29, 2000. He was convicted on August 10, 2002 and sentenced on October 15, 2002. An amendment to the death penalty statute became effective on July 1, 2002.

Under the prior death penalty statute, the jury's weighing of aggravating factors and mitigating factors and the ensuing recommendation was not binding on the trial judge. Under the revised statute, the judge, after receiving the jury's recommendation as to the death penalty, was to sentence "accordingly."[1] Ritchie argued

---

1. The amendment at issue in *Ritchie* was, obviously, pre-*Blakely*. The *Ritchie* Court did note the United States Supreme Court had granted certiorari in *Summerlin v. Stewart*, 341 F.3d 1082 (9th Cir.2003) *cert. granted sub nom. Schriro v. Summerlin*, 540 U.S. 1045, 124 S.Ct. 833, 157 L.Ed.2d 692 (2003) to address the retroactive application of *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). In *Summerlin*, the Ninth Circuit held that retroactive application of Arizona's change in its death penalty statute violated the *ex post facto* clause of the federal constitution by substituting the jury for the judge as the agent required to find the statutory aggravators. 341 F.3d at 1108. Our Indiana Supreme Court noted: "Despite this holding, we believe the Indiana amendment neither changes the elements of the crime nor enlarges its punishment. It simply mandates that once the jury makes a recommendation, pursuant to its findings, the judge is to sentence 'accordingly.'" 809 N.E.2d at 264.

On certiorari, the Supreme Court in *Summerlin* found the change was only procedural because it did not alter the range of conduct

the 2002 amendment to the Death Penalty Statute was an *ex post facto* law because it effected a substantive change from the previous statute. Our Indiana Supreme Court disagreed, holding "the Indiana amendment neither changes the elements of the crime nor enlarges its punishment. It simply mandates that once the jury makes a recommendation, pursuant to its findings, the judge is to sentence 'accordingly.' " 809 N.E.2d at 264.

The statute in *Dobbert* similarly "altered the methods employed in determining whether the death penalty was to be imposed; there was no change in the quantum of punishment attached to the crime." *Brice v. State*, 815 A.2d 314, 321 (Del. 2003). A statute that enlarged the class of people who were competent to testify in criminal cases was not an *ex post facto* law because it did not increase the punishment nor change the ingredients of the offense or the ultimate facts necessary to establish guilt. *Hopt v. Utah*, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884).

In *Collins v. Youngblood*, 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990), a statute that allowed an appellate court to reform a verdict that assessed a punishment unauthorized by law was held not to be an *ex post facto* law because it did not

"(1) punish as a crime an act previously committed which was innocent when done; (2) make more burdensome the punishment for a crime, after its commission; nor (3) deprive one charged with a crime of any defense available according to the law at the time the act was committed." The *Ritchie* court found "the amendments to the Indiana Death Penalty Statute did none of these and is not invalid *ex post facto* legislation." 809 N.E.2d at 264.

The Arizona Supreme Court recently addressed the retroactive effect of a statutory change similar to the amendment to the Indiana sentencing statutes, and determined the change was not "simply procedural." *State v. Fell*, 210 Ariz. 554, 115 P.3d 594, 600 (2005). It noted initially that a statute may be applied retroactively even absent express language to that effect, if the enactment is "procedural only" and does not alter or affect earlier established substantive rights. This is because "litigants have no vested right in a given mode of procedure." *Id.*

Under the law in effect when Edward Sanders [2] committed his crime, a trial court could consider only ten aggravators specified by statute in making the choice between a life and "natural life" sentence. [3]

---

Arizona law subjected to the death penalty. Instead, the rule altered the range of permissible methods for determining whether a defendant's conduct was punishable by death. *Schriro v. Summerlin*, 542 U.S. 348, 353, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004). More specifically, the Court characterized the rule as one that merely "allocate[s] decisionmaking authority," which rules are "prototypical procedural rules." *Id.* The Court contrasted rule changes that were substantive and apply retroactively because they carry a significant risk that a defendant "faces a punishment that the law cannot impose upon him." *Id.* at 352, 124 S.Ct. 2519.

The changes in the Indiana sentencing statute to provide for "advisory" rather than "presumptive" sentences appear to have the

latter effect rather than the former. They do not "allocate" decisionmaking authority—rather, they make unnecessary *any* finding of aggravators before a maximum sentence may be imposed. In that sense, they subject a defendant to a punishment that could not previously have been imposed on him—i.e., a maximum sentence permitted by statute without any finding of, and thus presumably without the presence of, aggravating circumstances.

**2.** Sanders was the defendant whose sentencing was addressed in *Fell*.

**3.** Under Arizona law, if the death penalty is not imposed for first-degree murder, the only other possible sentences are life with the pos-

The amended statute empowered the trial court to take into account twenty-one statutory aggravators. The trial court concluded only the original ten aggravating circumstances were relevant to its sentencing decision. The Arizona appeals court and supreme court affirmed. "Because the new statute thus allows the imposition of a sentence on the basis of factors that the prior law excluded from consideration [i.e., the twenty-one aggravators in the revised statute], it is plainly a substantive change in the law." *Id.* at 600.

Under the *Fell* standard, the addition of eleven new aggravating circumstances a court could consider was a "substantive" change. *A fortiori*, it appears the Indiana sentencing amendments, which now permit a trial court to impose any sentence authorized by a statute or the constitution "*regardless of* the presence or absence of aggravating circumstances or mitigating circumstances" are not merely "procedural." Those amendments allow "the imposition of a sentence on the basis of factors that the prior law excluded from consideration," *Fell*, 115 P.3d at 600, those factors being aggravators not admitted by the defendant or proven to a jury. The amendments therefore "alter or affect earlier established substantive rights," *id.*, specifically, a defendant's right to have aggravating circumstances submitted to a jury and found beyond a reasonable doubt before a presumptive sentence is enhanced.

In *State v. Upton*, 339 Or. 673, 125 P.3d 713 (2005), the Court determined a *Blakely*-related statutory change could be applied retroactively because the change did not disadvantage the defendants to whom the amended statute was applied. The new statute authorized a court to submit to a jury any fact that is "constitutionally

required to be found by a jury in order to increase the sentence that may be imposed upon conviction of a crime." *Id.* at 716. Previously, a sentencing court could impose a sentence outside the presumptive range if it found "substantial and compelling reasons justifying a deviation from the presumptive sentence." *Id.* at 717. A sentencing court was obliged under the prior statute to impose the presumptive sentence unless the judge found such "substantial and compelling reasons to impose a departure." *Id.*

The Court noted the Oregon Constitution prohibited as *ex post facto* laws "retroactive alterations of evidentiary rules that make it easier for the state to obtain a conviction." *Id.* at 719. It rejected Upton's argument, finding the new law

changes only the method for determining the available punishment; it does not, however, increase that punishment. To the extent [the new law] changes the quantum of proof required under the sentencing guidelines, it inures to defendant's advantage to require the state to prove any enhancing factors beyond a reasonable doubt. For a statute to violate state or federal *ex post facto* clauses, the statute must at least effect some kind of disadvantageous change upon a defendant. We conclude [the new law] does not disadvantage defendant in any manner that violates the *ex post facto* clauses of either the federal or state constitutions.

*Id.* at 719 (citations omitted).

The Indiana amendments, by contrast, appear to "effect some kind of disadvantageous change upon a defendant" to the extent they permit the imposition of a maximum sentence without any finding of

sibility of release after a specified period, which is referred to as a "life" sentence, or life with no possibility of eventual release, which is called a "natural life" sentence. *Fell*, 115 P.3d at 596–97.

aggravating circumstances by *any* factfinder—judge or jury. Accordingly, I believe the application of the new sentencing statutes to Banks, and other defendants who committed crimes before the effective date of the amendments, violates the prohibition against *ex post facto* laws.

However, a *Blakely* violation is subject to a harmless error analysis. *See Rembert v. State*, 832 N.E.2d 1130, 1133 (Ind.Ct. App.2005). Even under the previous sentencing statutes, Banks' extensive criminal history and his probationary status at the time of the offense would permit the imposition of an enhanced sentence. Because any error in sentencing Banks under the amended statute was harmless, I respectfully concur in the result.