NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ANDRES SERRATO GARNICA, *Appellant.*

No. 1 CA-CR 17-0483
FILED 1-10-2019

Appeal from the Superior Court in Maricopa County
No. CR2015-155207-001
The Honorable Erin O'Brien Otis, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael T. O'Toole
*Counsel for Appellee*

Maricopa County Office of the Legal Advocate, Phoenix
By Dawnese C. Hustad
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge Randall M. Howe joined.

---

J O H N S E N, Judge:

¶1          Andres Serrato Garnica appeals his conviction and sentence for second-degree murder.  He argues the court made three erroneous evidentiary rulings and erred in imposing an aggravated sentence.  For the reasons that follow, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2          Garnica and his wife, M.P., and their two young children were preparing to move from Phoenix to California, where Garnica's father and step-mother lived.[1]  Garnica enlisted his neighbor, J.L., to help load a truck that Garnica had rented for the move.  Shortly after the men began packing, M.P. was walking with the couple's children toward the kitchen, when she heard two gunshots.  M.P. took the children to the bedroom. When she returned to the kitchen, she found Garnica holding a gun and standing over J.L., who was on the floor bleeding from gunshot wounds to his head and torso.  When the victim managed to come to his feet, Garnica grabbed him and "hog-tied" him with a rope.  J.L. soon died.  After Garnica threatened to kill her too, M.P. helped him quickly clean up after the shooting.  The two placed the body in a children's playpen and positioned the playpen in the back of the rental truck.

¶3          Early the next morning, the family proceeded to California, with Garnica driving the truck and M.P. following in a car with their children.  They arrived at Garnica's father's house later that day.  At about 9:00 p.m., local law enforcement responded to a call at the home.  Unaware of the murder, police arrested Garnica, seized his Glock 45-caliber handgun and charged him with domestic violence and weapons violations.

---

[1]     We view the facts in the light most favorable to upholding the verdict and resolve all reasonable inferences against the defendant.  *State v. Harm*, 236 Ariz. 402, 404, ¶ 2, n.2 (App. 2015).

¶4        The following morning, M.P. informed Garnica's father of the body in the truck, and he called police. Law enforcement discovered the body and transported Garnica to the local sheriff's department to be interviewed. During the interview, Garnica confessed to shooting and killing J.L.

¶5        Meanwhile, J.L.'s wife, G.L., had become concerned when her husband did not return home from helping Garnica load the truck. She noticed the truck that she had seen at the Garnica apartment was gone and the apartment was dark. Worried, she called police, who informed her she had to wait a week to report her husband missing.

¶6        After Garnica was charged and extradited to Arizona, a jury found him guilty of second-degree murder. The jury also found six aggravating factors. The superior court weighed the aggravating and mitigating factors and imposed the maximum sentence of 25 years in prison. Garnica timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2019), 13-4031 (2019), and -4033(A)(1) (2019).[2]

## DISCUSSION

### A.        Motion to Suppress.

¶7        Before trial, Garnica moved to suppress the incriminating statements he made during his interview with California law enforcement. Garnica argued the detective who interviewed him ignored Garnica's request for counsel, thereby rendering the statements involuntary and in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). The superior court addressed Garnica's motion at a hearing at which it heard testimony of the deputy who arrested Garnica, the detective who interviewed him, and Garnica himself. The court also reviewed a video recording of the interview. Finding Garnica had not invoked his right to counsel at any time, the court denied the motion to suppress.

¶8        The Fifth and Fourteenth Amendments afford a suspect the right against self-incrimination, which includes the right under the Sixth Amendment to counsel during a custodial interrogation. *Dickerson v. United States*, 530 U.S. 428, 432-35 (2000) (citing *Miranda*, 384 U.S. at 439-45). If a suspect requests counsel, "the interrogation must cease until an attorney

---

2        Absent material revision after the date of an alleged offense, we cite the current version of a statute or rule.

is present."  *Miranda*, 384 U.S. at 474.  However, "law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney."  *Davis v. United States,* 512 U.S. 452, 461 (1994).  Police are not required to construe every reference a suspect makes about an attorney as an invocation of the suspect's right to counsel.  "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, . . . precedents do not require the cessation of questioning."  *Id.* at 459.  Evidence obtained in violation of the suspect's right to counsel is subject to suppression at trial.  *State v. Rosengren*, 199 Ariz. 112, 120, ¶ 23 (App. 2000).

**¶9**          On appeal from the denial of a motion to suppress, we review only the evidence submitted at the suppression hearing, and we view those facts in the manner most favorable to upholding the superior court's ruling.  *State v. Blackmore*, 186 Ariz. 630, 631-32 (1996).   The superior court determines the credibility of witnesses.  *State v. Ossana*, 199 Ariz. 459, 461, ¶ 7 (App. 2001).  Although we review the court's legal decisions *de novo, id.*, we will not reverse a ruling on a motion to suppress absent abuse of discretion, *State v. Newell,* 212 Ariz. 389, 396, ¶ 22, n.6 (2006).

**¶10**          The evidence offered at the hearing supports the superior court's finding that Garnica did not invoke his right to counsel either before or during his interview.  Although Garnica testified he asked for a lawyer upon his arrest, the deputy who arrested him testified Garnica did not invoke his right to counsel.  Given the conflicting evidence, the superior court did not abuse its discretion in finding Garnica did not make such a request. *See State v. Estrada*, 209 Ariz. 287, 292, ¶ 22 (App. 2004) ("Because the trial court was in the best position to observe the demeanor of the witnesses and determine their possible biases, we must defer to its assessment of their credibility.").  Moreover, the evidence supported the court's finding that Garnica did not make a request for counsel during his interview with the detective the day after his arrest.  Indeed, Garnica acknowledged during cross-examination that he did not tell the detective he wanted a lawyer.

**¶11**          On appeal, Garnica nevertheless argues the superior court erred because he said during the interview that he had told the arresting officers the day before that he wanted to speak to a lawyer.  At the beginning of the interview, the detective informed Garnica of his rights under *Miranda*, including the right to counsel.  Garnica affirmatively responded when the detective asked if he understood those rights.  The detective proceeded to explain he did not want to talk with Garnica about

the domestic violence and weapons incident for which Garnica had been arrested and detained the day before. Nonetheless, after discussing the move to California and describing his relationship with M.P., Garnica without prompting began to criticize his treatment by the officers who had transported him for the interview, and contrasted that treatment with what he characterized as the "best service" the arresting officers had given him the day before:

> [Garnica]: [The arresting officers] were just like okay so we're [sic] read you your rights. And I'm like alright. I'm [sic] cooperate with you guys on anything you tell me.
>
> [Detective]: Yeah.
>
> [Garnica]: But I want to have an attorney or a lawyer.
>
> [Detective]: Un hun.
>
> [Garnica]: Because I'm not gonna speak on my own without knowing how to go to court on my own you know.
>
> [Detective]: Right.
>
> [Garnica]: So I'll cooperate on anything. Just let me get an attorney or a lawyer and we'll go from there.

**¶12** Citing *Arizona v. Roberson*, 486 U.S. 675 (1988), Garnica argues these comments obligated the detective to cease the interview and look into whether Garnica indeed had invoked his right to counsel during his arrest. *But see Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010) ("If an accused makes a statement concerning the right to counsel that is ambiguous or equivocal or makes no statement, the police are not required to end the interrogation, or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights.") (quotation and citation omitted).

**¶13** Garnica, however, cites no authority for the proposition that an interrogation must cease when a suspect does not tell the interrogator he wants a lawyer but instead, falsely tells the interrogator that he had earlier invoked his right to counsel. Because the record supports the superior court's finding that Garnica did not invoke his right to counsel, the court

did not err in concluding Garnica's inculpatory statements and confession were voluntarily made in compliance with *Miranda*.[3]

## B.    Photograph.

¶14        Garnica argues the court erroneously admitted a photograph of the murder weapon's case that also depicted "a bullet-proof or tactical vest." As he did at trial, Garnica argues the exhibit was irrelevant and whatever probative value it possessed was substantially outweighed by unfair prejudice.

¶15        Trial judges have "broad discretion" in deciding whether to admit photographic evidence. *State v. Bocharski*, 200 Ariz. 50, 56, ¶ 27 (2001). When determining whether to admit such evidence, the court first considers whether it is relevant, i.e., whether it aids the jury's understanding of any issue in dispute. *State v. Amaya-Ruiz*, 166 Ariz. 152, 170 (1990). The court next considers "whether the photographs would tend to incite passion or inflame the jury. In the event that they are inflammatory, the court balances their probative value against their potential to cause unfair prejudice." *Id.*

¶16        The superior court here did not err by admitting the photograph. First, the image of the gun case was relevant to establish Garnica's ownership, possession and, inferentially, use of the weapon. The case was found in Garnica's father's residence, which is where Garnica was staying when he was arrested. Although Garnica did not contest ownership and possession of the weapon, "[e]ven if a defendant does not contest certain issues, photographs are still admissible if relevant because the 'burden to prove every element of the crime is not relieved by a defendant's tactical decision not to contest an essential element of the offense.'" *State v. Dickens*, 187 Ariz. 1, 18 (1996) (quoting *Estelle v. McGuire,* 502 U.S. 62, 69 (1991)), *abrogated on other grounds by State v. Ferrero*, 229 Ariz. 239 (2012).

¶17        Further, Garnica has not shown that the image of the vest in the photo was prejudicial. No witness referred to the vest, nor did anyone mention it during closing arguments.

---

[3]        We have independently reviewed the video recording of the interview. The recording confirms the detective's testimony that he advised Garnica of his *Miranda* rights and did not threaten or coerce Garnica or promise him any benefit.

## C.      G.L.'s Account of the Prior Argument Between Garnica and J.L.

¶18      Over Garnica's objection on hearsay grounds, J.L.'s wife, G.L., testified that J.L. told her that he and Garnica had argued the day before the murder. The superior court permitted the testimony, finding it was not hearsay because it was admissible not to prove the argument occurred, but to illustrate G.L.'s state of mind when her husband did not return home from helping Garnica move. *See* Ariz. R. Evid. 801(c) ("'Hearsay' [is] a statement . . . offer[ed] in evidence to prove the truth of the matter asserted.").[4]

¶19      On appeal, Garnica argues G.L.'s testimony regarding the argument was irrelevant and therefore inadmissible. After the court explained the testimony was admissible to show G.L.'s state of mind, however, Garnica did not object that G.L.'s state of mind was irrelevant. Because Garnica only objected to the statement on hearsay grounds, we review for fundamental error. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005) (failure to object to alleged trial error results in fundamental error review); *State v. Lopez*, 217 Ariz. 433, 434-35, ¶ 4 (App. 2008) (objection at trial on a ground other than the one asserted on appeal does not preserve issue for appeal).

¶20      No error occurred, fundamental or otherwise. *See State v. Escalante*, 245 Ariz. 135, ___, ¶ 21 (2018) (first step in fundamental error review is determining whether error occurred). Although G.L.'s state of mind was only marginally relevant, Garnica has not established prejudice. It is difficult to perceive how, in light of the overwhelming evidence of Garnica's guilt, the verdict would have been any different absent G.L.'s testimony about the argument. *See id.* (defendant has burden to establish prejudice in fundamental error review); *State v. Dickinson*, 233 Ariz. 527, 531, ¶ 13 (App. 2013) ("[A defendant] must affirmatively 'prove prejudice' and may not rely upon 'speculation' to carry his burden [of establishing reversible fundamental error]."); *see also State v. Calhoun*, 115 Ariz. 115, 118 (1977) (evidentiary error deemed harmless in light of remaining overwhelming evidence of guilt).

---

4      The court precluded evidence that Garnica had brandished a gun during that previous argument with J.L.

**D.      Aggravated Sentence.**

**¶21**        Of the six aggravating factors the jury found, Garnica challenges the following three "catch-all" factors: The crime was committed while children were present in the apartment, Garnica fled the scene of the crime, and Garnica transported the victim's body out of state.  *See* A.R.S. § 13-701(D) (2019) (enumerating specific aggravating factors and including at subsection 27 "[a]ny other factor that the state alleges is relevant to the defendant's character or background or to the nature or circumstances of the crime").  We review for an abuse of discretion.  *State v. Hernandez*, 231 Ariz. 353, 355, ¶ 3 (App. 2013).[5]

**¶22**        Section 13-701(D)(18) allows the jury to find an aggravating factor when "[t]he offense was committed in the presence of a child and any of the circumstances exists that are set forth in § 13-3601, subsection A."  Garnica argues the legislature intended the presence of children to be a permissible aggravating factor only when § 13-701(D)(18) is satisfied, meaning only with respect to domestic violence offenses.  *See* A.R.S. § 13-3601 (2019) (defining "domestic violence").  According to Garnica, the superior court circumvented the legislature's intent by allowing the jury to find presence of a child as a catch-all aggravating factor under § 13-701(D)(27). Further, Garnica contends the evidence does not support a finding that he committed the murder in the presence of a child.

**¶23**        We are not persuaded.  The aggravating factor found by the jury refers to "children present inside of the residence," not "in the presence of a child."  The legislature's specification of the presence of a child during the commission of a domestic violence offense does not bar the court from considering under the "catch-all" that a jury found another crime was committed in a residence in which a child was present.  *See State v. Romero*, 173 Ariz. 243, 243 (App. 1992) (statutory aggravating factor requiring commission of a felony within prior 10 years did not preclude consideration of other felony under catch-all).  Moreover, abundant evidence established

---

[5]        Garnica improperly cites *State v. Schmid*, 220 Ariz. 563 (2009), for the proposition that the catch-all aggravating factor is unconstitutionally vague.  Our supreme court held in that case that the catch-all is unconstitutionally vague only when used as the sole factor on which to impose an aggravated sentence.  *Id.* at 566, ¶¶ 9-11.  *Schmid* does not apply here because, in addition to three catch-all factors, the jury found three statutory factors.  *See* A.R.S. § 13-701(D)(2), (5), (9).

that two young children were in the small apartment when Garnica twice shot J.L.

¶24 Garnica next argues the jury should not have considered fleeing the scene of the crime as an aggravating factor because he was not immediately pursued and he did not attempt to conceal himself. Garnica also summarily asserts the evidence does not support the flight factor.

¶25 The court did not err in permitting the jury to consider Garnica's flight from the crime scene, and the evidence supports the jury's finding that he did so. The evidence revealed Garnica hurriedly cleaned J.L.'s blood from the kitchen floor and quickly left the scene with J.L.'s body in the rental truck because he was afraid someone heard the gun shots and "they might come looking for him[.]"

¶26 Garnica also argues that moving a homicide victim's body to another state does not "make[] the crime worse or deserving of more punishment." By hiding and moving J.L.'s body, however, Garnica hindered law enforcement efforts to locate J.L., causing J.L.'s wife and family additional extreme anxiety and distress.

¶27 For these reasons, the superior court did not abuse its discretion in imposing an aggravated sentence. *See State v. Fell*, 210 Ariz. 554, 559, ¶ 18, n.7 (2005) ("an abuse of discretion will, as a practical matter, rarely be found" when court sentences defendant within statutorily authorized range); *see also* A.R.S. § 13-710 (2019) (maximum sentence of 25 years for conviction of second-degree murder).

## CONCLUSION

¶28 For the foregoing reasons, Garnica's conviction and sentence are affirmed.

