## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Feb 10 2015, 10:36 am

CLERK
of the supreme court, court of appeals and tax court

---

ATTORNEY FOR APPELLANT

Kristina J. Jacobucci
Newby, Lewis, Kaminski & Jones, LLP
La Porte, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

Thomas Drnek,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

February 10, 2015

Court of Appeals Case No.
46A03-1406-CR-206

Appeal from the La Porte Circuit Court
Honorable Thomas J. Alevizos, Judge
Cause No. 46C01-1211-FB-528

**Friedlander, Judge.**

Thomas Drnek appeals the sentence he received following his conviction of operating a vehicle while intoxicated causing death, a class B felony.[1] Drnek presents the following restated issues for review:

1. Did the trial court abuse its discretion in finding and evaluating aggravating and mitigating factors?
2. Is Drnek's sentence inappropriate in light of the nature of the offense and his character?

We affirm.

In the early morning hours of November 1, 2012, Drnek, while operating a vehicle, was involved in a wreck that killed his friend, Jacob Anderson. Tests revealed that at the time, Drnek's blood-alcohol content exceeded .15. The alcohol in his system was a major contributing factor to the accident. Drnek was charged with operating a vehicle while intoxicated causing death, a class B felony, and operating a vehicle while intoxicated in a manner that endangered another person, a class A misdemeanor. Drnek pleaded guilty to the class B felony offense in exchange for the State's agreement that the executed sentence would be capped at ten years. Following a sentencing hearing, the trial court sentenced Drnek to ten years, all executed.

---

[1] The version of the governing statute, i.e., Ind. Code Ann. § 9-30-5-5(b)(1) (West, Westlaw 2013) in effect at the time this offense was committed classified it as a class B felony. This statute has since been revised and in its current form reclassifies this as a Level 4 felony. *See* I.C. § 9-30-5-5(b)(1) (West, Westlaw current with all 2014 Public Laws of the Second Regular Session and Second Regular Technical Session of the 118th General Assembly). The new classification, however, applies only to offenses committed on or after July 1, 2014. *See id.* Because this offense was committed before that date, it retains the former classification.

1.

[4] Drnek first contends the trial court erred in evaluating aggravating and mitigating circumstances. We begin with his claim that the trial court erred in considering "a single non-violent misdemeanor as an aggravating factor, and failed to attach any significant weight to the relevant mitigators." *Appellant's Brief* at 5. The factor to which he alludes was described on the presentence investigation report (PSI) as a class C misdemeanor charge of failing to surrender his suspended driver's license. Drnek complains that such was not a proper aggravator because it was a relatively minor offense, and because he was not even aware at the time that his license had been suspended. We believe Drnek mischaracterizes the nature of the aggravating circumstance found by the trial court.

[5] It is true that the PSI included this charge. At the sentencing hearing, however, Drnek admitted that on May 1, 2013, he was cited for speeding. He did not pay that ticket and therefore his license was suspended. On September 24, 2013, he was cited for driving while suspended. On October 8, he was again cited for driving while suspended. The next day, he was charged with failing to surrender a suspended license. In November 2013, he was once again caught driving while suspended. Although these offenses were not reflected in the PSI, the court noted that he had admitted them on the record and therefore that they could properly be considered.

[6] When setting out the aggravating and mitigating circumstances at sentencing, the trial court described this aggravator as follows: "And there is an aggravator. And that aggravator is that he continued to violate the law subsequent to his arrest here [.]" *Transcript* at 56. Other comments by the trial court clearly reflect that it referred not only to the "single non-violent misdemeanor" identified on the PSI, and to which Drnek alludes, *Appellant's Brief* at 5, but also to the three citations for driving on a suspended license that occurred after the fatal accident.[2] Moreover, we note Drnek's contention that this "single" offense was unrelated to the present offense and therefore may not properly be considered. We cannot agree that these offenses are entirely unrelated to Drnek's offense of driving while intoxicated causing death. The trial court did not err in citing this as an aggravating factor.

[7] Drnek next contends that the trial court erred in failing to cite certain proffered mitigators. An allegation that the trial court failed to find a mitigating factor requires the defendant to establish that the mitigating evidence in question is not only supported by the record but also that the evidence is significant. *Anglemyer v. State,* 875 N.E.2d 218 (Ind. 2007), *opinion on reh'g.* A trial court is not obligated to accept the defendant's contentions as to what constitutes a mitigating circumstance. *Wilkes v. State*, 917 N.E.2d 675 (Ind. 2009). Nor is it required to explain why it chose not to make a finding of mitigation. *Felder v. State,* 870 N.E.2d 554 (Ind. Ct. App. 2007). Further, a trial court does not abuse

---

[2] When asked at the hearing why these offenses were not included on the PSI, someone from the Probation Department explained, "We don't run driving records on the PSI." *Transcript* at 55.

its discretion in failing to find a mitigating factor that is highly disputable in nature, weight, or significance. *Rogers v. State,* 878 N.E.2d 269 (Ind. Ct. App. 2007), *trans. denied.*

[8] At the hearing, Drnek presented evidence that he is HIV positive and, at the time of the underlying offense, he was receiving ongoing medical services from Aliveness Project of Northwest Indiana. Citing *Moyer v. State,* 796 N.E.2d 309 (Ind. Ct. App. 2003), he contends the trial court erred in failing to find this as a mitigating factor at sentencing. In *Moyer,* our Supreme Court held that the defendant's illness was a significant mitigating circumstance because, among other things, he "testified at length about the medical hardships that he would endure if incarcerated." *Id.* at 314.

[9] Michael Hughes, a lead care coordinator for Aliveness Project of Northwest Indiana, testified at Drnek's sentencing hearing in general terms about the treatment Drnek was receiving from Aliveness Project of Northwest Indiana as a result of his medical condition. He also testified about substance-abuse treatment that Drnek received there. In his final argument, Drnek's counsel did not argue that Drnek's medical condition was a mitigating factor. Thus, the State's contention on appeal that Drnek failed to argue this as a mitigator is not entirely groundless. To the extent that it was argued, however, we note that Hughes was questioned about whether such treatment was available for persons incarcerated in the DOC system, and if so, whether there was a difference in the level and quality of treatment for those in the DOC versus those not in the DOC. That discussion was as follows:

Q.   Do you have any familiarity as to the expertise, or shall I say track record, of the Department of Correction in treating inmates who have this disease?

A.   I've been to Westville.  I've been to ISP.  Usually we get a referral call.  The system is set up with DOC.  They contact our SVH and produce the release of information.  It is then final to the particular care site in that region.  We have to schedule an intake to go out and meet with that particular incarcerated person before they are discharged – they are released.  So we can start things when they have – when they get out.  They will have some services that they know they are coming into.

Q.   Let me stop you there.  What about while they are in there?  Do they receive the same quality of care that they would in –

A.   No, they do not.  And I have asked in this – because it comes up in the point of the intake.  Tell me about how – how was your medical treatment?  It's just as – one is that.  Some receive care.  I wouldn't say it would be substandard, but it's certainly not what they're capable of getting being outside.

Q.   Is it your opinion that there is a real and significant difference between the treatment that Mr. Drnek would receive outside of the DOC versus what he would receive within the DOC?

A.   Depending on if he was sent – if he were within the DOC system, depending on where he was sent, I've seen mixed results.

*Transcript* at 11-12.

[10]   As indicated above, in *Moyer*, the defendant testified at length about the medical hardships he would endure if he were incarcerated.  For instance, the record reflected that the defendant's illness required "constant medical attention" and

"frequent tracheal cleanings and sterile catheters, which the jail [could not] provide regularly." *Moyer v. State*, 769 N.E.2d at 314. Our review of the record reveals that Drnek did not provide such evidence. Even Hughes's testimony about the difference between the treatment Drnek would receive in and out of prison was equivocal. Therefore, Drnek failed to conclusively establish that treatment for his medical condition was unavailable within the DOC system, or even that it would be qualitatively different than what he could receive outside of the DOC. As a result, the trial court did not err in failing to find this as a mitigating circumstance.

[11] Drnek also contends that "the trial court failed to consider that the circumstances of the crime are unlikely to recur and that [his] character and attitude indicate that he is unlikely to commit another offense." *Appellant's Brief* at 10. The State contends that Drnek waived these errors because he did not mention them to the trial court at the sentencing hearing. We agree. *Banks v. State*, 841 N.E.2d 654 (Ind. Ct. App. 2006), *trans. denied*.

[12] Even were they not waived however, the trial court was not required to consider them because their significance is disputable. Drnek acknowledged at the sentencing hearing that he continued to drink after the accident, and also acknowledged that he continued to drive his vehicle even after his license was suspended. Under these circumstances, the trial court was not compelled to find that he was unlikely to commit another such offense.

2.

Drnek contends that his sentence is inappropriate in light of the nature of his offense and his character. Article 7, section 4 of the Indiana Constitution grants our Supreme Court the power to review and revise criminal sentences. *See Knapp v. State*, 9 N.E.3d 1274 (Ind. 2014), *cert. denied*, 2015 WL 133288 (Jan. 12, 2015). Pursuant to Ind. Appellate Rule 7, the Supreme Court authorized this court to perform the same task. *Cardwell v. State*, 895 N.E.2d 1219 (Ind. 2008). Per Indiana Appellate Rule 7(B), we may revise a sentence "if after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Inman v. State*, 4 N.E.3d 190, 203 (Ind. 2014) (quoting App. R. 7). "Sentencing review under Appellate Rule 7(B) is very deferential to the trial court." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). Drnek bears the burden on appeal of persuading us that his sentence is inappropriate. *Conley v. State*, 972 N.E.2d 864.

The determination of whether we regard a sentence as appropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Bethea v. State*, 983 N.E.2d 1134, 1145 (Ind. 2013) (quoting *Cardwell v. State,* 895 N.E.2d at 1224). Moreover, "[t]he principal role of such review is to attempt to leaven the outliers." *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013). It is not our goal in this endeavor to achieve the perceived "correct" sentence in each case. *Knapp v. State*, 9 N.E.3d 1274. Accordingly, "the question under Appellate Rule 7(B) is not whether another sentence is *more*

appropriate; rather, the question is whether the sentence imposed is inappropriate." *King v. State,* 894 N.E.2d 265, 268 (Ind. Ct. App. 2008) (emphasis in original). Our Supreme Court has indicated that when analyzing the appropriateness of a criminal sentence, there is "no right answer ... in any given case." *Brown v. State*, 10 N.E.3d 1, 8 (Ind. 2014) (quoting *Cardwell v. State,* 895 N.E.2d at 1224). Rather, appellate review and, where appropriate, revision "ultimately boils down to the appellate court's 'collective sense of what is appropriate, not a product of a deductive reasoning process.'" *Id.* (quoting *Cardwell v. State*, 895 N.E.2d at 1225). Ultimately, we "focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.*

[15]     In order to assess the appropriateness of a sentence, we first look to the statutory ranges established for the classification of the relevant offenses. Drnek was convicted of a class B felony – operating a vehicle while intoxicated causing death. The advisory sentence for a class B felony is ten years, with the minimum and maximum sentence being six and twenty years, respectively. *See* Ind. Code Ann. § 35-50-2-5 (West, Westlaw 2013). Drnek was sentenced to the advisory term, i.e., ten years.

[16]     The evidence reveals that Drnek has been aware since at least 2009 that he has a substance-abuse problem. On the night in question, Drnek consumed so much alcohol that his BAC registered well above the legal limit. He then drove with another person as a passenger and wrecked the vehicle, causing that person's death. The victim was a friend. Yet, Drnek continued to drink

alcohol after the date of the accident and then subsequently continued to drive while his license was suspended.  These circumstances do not reflect positively on his character.  Indeed, the trial court could reasonably have concluded that Drnek poses some risk of reoffending.  Accordingly, the advisory ten-year sentence imposed by the trial court was not inappropriate.

[17]    Judgment affirmed.

Kirsch, J., and Crone, J., concur.